**Rose DIONNE, etc., Plaintiff, Appellee,**

v.

**Gerard BOULEY, etc.,
Defendant, Appellant.**

**Rose DIONNE, etc., Plaintiff, Appellant,**

v.

**Gerard BOULEY, etc.,
Defendant, Appellee.**

Nos. 84–1258, 84–1280.

United States Court of Appeals,
First Circuit.

March 19, 1985.

Andrew S. Richardson, Providence, R.I., with whom John W. Dineen, Robyn Y. Davis, and John Rao, Providence, R.I., were on brief, for Rose Dionne.

Marilyn F. McGair, Sp. Asst. Atty. Gen., Cranston, R.I., with whom Dennis J. Roberts, II, Atty. Gen., Providence, R.I., was on brief, for Gerard Bouley.

Steven H. Musen and Peter D. Shore, Providence, R.I., on brief as amicus curiae.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This case concerns the constitutionality of the post-judgment garnishment procedure of Rhode Island. It raises the question whether Rhode Island law provides adequate notice to a judgment debtor whose property is attached of any right he may have under state or federal law to have his property exempted from attachment, and of the means for claiming such exemption, and whether Rhode Island affords an adequate opportunity for a prompt hearing at which the question of exemption can be determined. The United States District Court for the District of Rhode Island, in a comprehensive opinion, *Dionne v. Bouley*, 583 F.Supp. 307 (1984), held that current procedures were constitutionally insufficient. It enjoined defendant Gerard Bouley, Chief Clerk of the District Courts of the State of Rhode Island, from issuing writs of attachment thereunder. We modify and affirm.

I. FACTS

On July 26, 1982, plaintiff Rose Dionne was the losing party in an action of eviction brought against her by her landlord in the

* Of the District of Puerto Rico, sitting by designation.

Second Division District Court of Rhode Island. The judgment included an order that she pay one month's rent, a sum of $550. Pursuant to the judgment, an execution was issued against Dionne, which was returned to the state court marked "unsatisfied." Thereafter, the judgment creditor obtained a writ of attachment from the clerk of the state court under R.I.Gen. Laws § 10–5–2 [1] (1969 Reenactment) (Supp. 1983) and Rule 4(j)(2) [2] of the state district court, and served the writ on Dionne's bank. As a result, the bank "froze" her bank account on August 13, 1982.

At the time this occurred, Rhode Island law permitted any creditor who was unable to execute his judgment to file a second "debt on judgment" action against the debtor and to attach the debtor's property as security for this second suit. [3] Dionne's bank account was attached [4] pursuant to a suit of this nature filed by the creditor under R.I.Gen.Laws § 9–28–1 [5] (1969 Reenactment), in which the creditor sought another money judgment in the amount of $551.80 plus costs of $50. Dionne was served with process in this second action on August 17, 1982. [6] That same day, she received notice from her bank that one of her checks had been returned for insufficient funds and that the bank was imposing a $5 service charge for the check's return. On calling the bank to inquire about this, Dionne was told that her funds had been attached.

Dionne's checking account contained $601 when it was attached, most of which consisted of social security benefits paid to her and her four minor children, with a small portion of the account being attributable to her wages. [7] Under federal law, [8]

1. This statute provided in part,

 In all actions where the plaintiff's claim against the defendant has been reduced to a judgment, the defendant's assets, including his personal estate and real estate, may be attached without any further hearing by the court or notice to the defendant.

2. This rule provides:

 *Writ of Attachment.* The writ of attachment shall bear the signature or facsimile signature of the clerk, be under seal of the court, contain the name of the court, the names and residences of the parties and the trustee, if any, and the date of the commencement of the action, be directed to the sheriff of the county or his deputies, or to either of the town sergeants or constables in such county, and command them to attach the goods or estate of the defendant to the value of the amount of the plaintiff's demand for judgment, together with a reasonable allowance for interest and costs, and to make due return of their doings thereon.

3. The Rhode Island legislature has since amended section 10–5–2, eliminating the requirement of a second suit, and the provision that no notice of the attachment has to be given to the defendant. *See* 1984 R.I.Pub.Laws ch. 357, § 2. The statute now reads, in part:

 [I]n all actions where the plaintiff's claim against the defendant has been reduced to a judgment, the defendant's assets, including his personal estate and real estate, may be attached without any further hearing by the court and may be subject to trustee process as set out in chapter 17 of this title in the same action in which the judgment has been entered.

 R.I.Gen.Laws § 10–5–2 (1969 Reenactment) (Supp.1984).

4. We follow the district court's opinion in using the terms "attachment" and "garnishment" interchangeably although these terms are not always synonymous. *See Finberg v. Sullivan,* 634 F.2d 50, 52 n. 1 (3d Cir.1980) (en banc).

5. This section provides:

 Any judgment creditor, after his execution has been returned wholly or in part unsatisfied, may by a civil action in the nature of a creditor's bill reach and apply and subject to the payment and satisfaction of his judgment any equitable estate, any equitable assets or any choses in action of the judgment debtor, except such as shall be exempt from attachment by virtue of statutory provision. The remedy provided by this section shall be cumulative and shall not supersede any existing remedy.

6. According to Dionne's counsel at oral argument, Dionne received copies of the summons and complaint in the debt on judgment action, as well as a copy of the writ of attachment. The latter was a form directed to the sheriff of the county containing only the information required by Rule 4(j)(2). It did not warn the debtor of the possibility that some of the property might be exempt nor advise her of any procedure to challenge the attachment.

7. According to the stipulation of the parties, Dionne's sole income was made up of social security benefits of $465 per month for her

8. See note 8 on page 1347.

social security benefits are not subject to "attachment, garnishment, or other legal process...." Other exemptions, federal and state, also exist which might have pertained to some or all Dionne's monies in this account. *See, e.g.,* 15 U.S.C. § 1673 (1982); R.I.Gen.Laws § 9–26–4(12)(a) (1969 Reenactment) (Supp.1984). Dionne, who was solely responsible for the support of herself and her children, was unaware of, and was not provided with notice of, any procedures through which she could challenge the attachment or raise a claim that some or all of the property was exempt.

According to the parties' stipulations it was the practice of the state district court to issue blank writs of attachment upon request, with the name of the clerk and the seal already affixed, to creditors or their attorneys. No motion to attach was required with these, the writ being simply served directly on the trustee (*i.e.,* bank, employer). The parties also stipulated that there was no required hearing or notice of any possible hearing, either before or after the writ of attachment was issued and served, and that there was no notice to the judgment debtor of any possible defenses or exemption claims.

A short time after learning of the attachment, on September 14, 1982, Dionne brought this action in the federal district court challenging the constitutionality of the postjudgment garnishment procedure in the state district court system. She asserted causes of action under 42 U.S.C. § 1983 for alleged violation of the due process and supremacy clauses of the federal Constitution. Dionne criticized the state's failure to have provided her with a prompt notice of the attachment that would have informed her of the existence of the state and federal exemptions and the means for her to claim them. She further criticized the lack of any specific provision in Rhode Island law for a hearing, either prior to the attachment or immediately following the issuance and service of the writ, at which any exemptions could be claimed. She requested declaratory and injunctive relief, and class certification.

On or before the filing of this suit, the judgment debtor released the attachment of Dionne's bank account, leaving her once more in control of her funds.

In November 1982, Dionne moved to certify a class of all judgment debtors in Rhode Island who might have been subject in the future to post-judgment attachment procedures and whose funds might have been exempt in whole or in part under state or federal statutory exemptions. Defendant opposed this motion. On March 18, 1983, the district court denied certification on the ground that any injunctive relief awarded "would inure to the benefit of all those similarly situated, and would be identical regardless of whether or not the action is maintained as a class action."

Thereafter, Dionne moved for summary judgment, most of the above facts having been previously stipulated by the parties. On March 23, 1984, the district court issued its opinion and order, 583 F.Supp. 307, declaring the challenged procedure unconstitutional and issuing the requested injunction. Defendant appeals from the judgment below asserting that the case was moot, that the district court should have abstained, and that the challenged procedures are not unconstitutional. Dionne cross-appeals claiming that the district court erred in denying class certification.

children and $125 per month as a widow, plus $100 bi-weekly from her job wages after mandatory deductions.

8. 42 U.S.C. § 407 (1983) provides:
 (a) Inalienability of right to future payments
 The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the money paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
 (b) Inamendability of section by inference
 No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

An amicus curiae brief favoring the constitutionality of the Rhode Island procedure has been submitted by Rhode Island attorneys practicing in the field of collection law.

## II. MOOTNESS

 While the attachment of Dionne's bank account was released at or before the time she filed this action, the district court ruled that the case was not moot because the underlying dispute was "capable of repetition, yet evading review." 583 F.Supp. at 312. *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). To come within this exception, there had to be present two elements: (1) the activity being challenged must, by its nature, be of such short duration that it is unlikely to be fully litigated before its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same acts again. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *Loeterman v. Town of Brookline,* 709 F.2d 116, 118 (1st Cir.1983). We agree with the district court that this case meets these requirements.

The Third Circuit faced a similar situation in *Finberg v. Sullivan,* 634 F.2d 50 (1980) (en banc). In *Finberg* a social security recipient's checking and savings accounts were garnished under Pennsylvania post-judgment attachment procedures. The recipient brought a state court action to set aside the attachment and also sued in the federal district court attacking the constitutionality of the Pennsylvania procedures. Within five months after commencement of the state action, and before plaintiff's constitutional claim was adjudicated by the federal court, the state court released the attachment. Thereafter, the district court held against plaintiff on the merits of her constitutional claim. The court of appeals reversed. Addressing the

contention that the federal action was moot, the Third Circuit wrote,

In the present case, Mrs. Finberg does have some reason to fear that she will suffer another attachment of her bank accounts. She remains a judgment debtor. As the record indicates that she is an elderly widow with a modest income, this judgment could remain unsatisfied for some time. Future efforts to execute the judgment are therefore likely. Sterling [the creditor] might repeat its attempt to garnish the accounts. For example, when new funds accumulate in the accounts, Sterling might find that the garnishment process is the most efficient way of determining whether any of the new funds are exempt. We also cannot disregard the possibility that a successor to Sterling's interest, such as a collection agency could make such an attempt.

Furthermore, Mrs. Finberg's modest income and the difficulties that she has demonstrated in this case in meeting the demands of a creditor indicate that she may incur another money judgment and suffer an attempted garnishment to execute it. . . .

. . . .

Mrs. Finberg also can show that any recurrence probably would evade review in this court. Any lawsuit challenging the constitutionality of the attachment would require, at the very least, one year to proceed from the filing of a complaint in the district court to the entry of judgment in this court. The attachment probably would end within that time with the occurrence of either of two events: the release of the accounts from attachment pursuant to claims of exemptions, as occurred here, or the entry of a final judgment in the state court garnishment action. Neither event should take as long as one year to occur because the issues and procedures in a garnishment are relatively simple. An exceptional instance of a long and protracted garnishment is most unlikely, given the small amounts of money that Mrs. Finberg reasonably might accumulate in her bank account. In the present case, for example, the

process reached completion within six months.

We conclude that the attachment of Mrs. Finberg's bank accounts during an attempt to garnish them was short-term activity, "capable of repetition yet evading review."

*Finberg*, 634 F.2d at 55–56 (citations omitted).

This analysis is pertinent here. The parties have stipulated that Mrs. Dionne "is a person of very low income who will continue to be subject to the procedures and form [presumably the attachment form] challenged in this action." This likelihood is enhanced by the fact that some of her income (more than 25 percent) comes from wages, and is thus not exempt, a fact which could encourage the present judgment creditor not to give up altogether. Moreover, the fact that Dionne's funds were released before any court had the opportunity to declare their exempt status weakens the argument relied on by the dissent in *Finberg* that, because their exempt status had already been declared, no further attachment was likely.[9] We therefore accept the district court's finding that there was a "reasonable expectation" that Mrs. Dionne would be subject to another post-judgment attachment. *See also Harris v. Bailey*, 675 F.2d 614, 616 (4th Cir. 1982).

The district court could also justifiably find that under the post-judgment garnishment procedure of Rhode Island an "instance of a long and protracted garnishment is most unlikely." A post-judgment attachment is merely an ancillary device which, in Rhode Island as in many other states, can be unilaterally effected and, just as quickly, dropped. The debt on judgment action, now no longer required, did not lengthen matters, as this was also a simple and short proceeding normally lacking in controverted issues. By the time a case can be heard and decided in the federal court, the attached funds will usually have been obtained by the creditor or else released.

Defendant urges us to remand for a finding whether the attachment was released before the present suit was brought. However, we do not believe mootness hinges on whether or not this was so. Mrs. Dionne remained a judgment debtor even if the attachment was released before she sued. The creditor could attach her account again, and, in any event, he should not be permitted, nor should the state be permitted, to evade review of the adequacy of the attachment procedures merely by the expedient of dropping the case after the attachment had been in effect for some time. The harm done by the attachment—the freezing of the account, the dishonoring of the check—has occurred; dropping the attachment did not moot the judgment debtor's concern that she would again be subjected to such practices nor her dispute over their legality. We hold the case is not moot.

### III. ABSTENTION

Citing to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), defendant argues that the district court should have abstained so as to allow the Rhode Island courts to construe its own laws, in particular those granting exemptions from attachments and garnishments. Defendant expresses confidence that, properly construed, these "do protect plaintiff's legitimate concerns."

However, we perceive no difficult and unsettled questions of state law that need to be resolved before the procedural due process claim brought by Dionne can properly be addressed. *Id.* at 500, 61 S.Ct. at

---

9. In his dissent, Judge Aldisert concluded that the controversy in *Finberg* was moot because, as there had been a judicial determination that the funds were exempt, the creditors could not be reasonably expected to attach her bank account again and even if they did, both the plaintiff and her bank would not then require any notice of the exemption. 634 F.2d at 67–68. Judge Aldisert, however, conceded that plaintiff met the first part of the test—that attachment execution actions were by their nature of such short duration that they will rarely, if ever, persist through the course of full judicial review. *Id.*

645. Defendant alleges various ambiguities in the Rhode Island *substantive* exemptions, but these are irrelevant to Dionne's procedural due process claim. Her attack is not upon the adequacy of the state exemptions but upon the absence of specific notice and hearing procedures directly following an attachment that will permit meaningful invocation of whatever federal or state exemptions there are.

The district court characterized present Rhode Island procedures as "admirably free of ambiguity." 583 F.Supp. at 311. Certainly it is clear that Rhode Island law contains no express provision whatever for a hearing relative to a post-judgment attachment or notice thereof. To be sure, a Rhode Island court might fashion timely procedures to meet plaintiff's complaints relying in part upon its general powers to correct mistakes. *See* note 12, *infra. Finberg*, 634 F.2d at 59–60. But we do not think this mere possibility is a sufficient basis to require abstention given the complete absence of express procedures addressing the issue raised by Dionne.

This is not a case where a state court has already commenced a proceeding that is likely to result in clarifying or expanding the state's post-judgment process. *See Romany v. Colegio de Abogados de Puerto Rico*, 742 F.2d 32 (1st Cir.1984). There is no present state case in which plaintiff's claim might be remedied. And while, assuming a state case were to be instituted, it is not inconceivable that a state court could, without legislative action, take steps to create appropriate procedures, a federal court is not required to abstain in the vague hope that state courts will reconstruct procedures that are presently deficient. The Supreme Court has rejected abstention when a state statute was not fairly subject to an interpretation which would render unnecessary the federal constitutional question. *Hawaii Housing Authority v. Midkiff*, —— U.S. ——, ——, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). "[I]f the naked question, uncomplicated by ambiguous language is whether the act on its face is unconstitutional, abstention from federal jurisdiction is not required." *Id.* at 2327–28 (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971)).

We hold that the district court properly considered the merits of the constitutional claim. *See Brown v. Liberty Loan Corporation of Duval*, 539 F.2d 1355, 1362 (5th Cir.1976); *Fuller v. Hurley*, 559 F.Supp. 313, 319 (W.D.Va.1983).

## IV. DUE PROCESS

■■ There is no dispute that Dionne was entitled to the exemption created by Congress in 42 U.S.C. § 407 with respect to the social security funds she had deposited in her attached bank account. *See Philpott v. Essex County Welfare Board*, 409 U.S. 413, 416, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973). It is also clear that Dionne's interest in retaining her exempt social security funds free from attachment was the kind of property interest that is entitled to due process protection. *See Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970). The question is simply whether Rhode Island post-judgment garnishment procedure, as currently set out in state law, affords Dionne appropriate notice and a sufficient opportunity to assert her exemption claim. We agree with the district court that it does not.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court said that,

> identification of the specific dictates of due process generally requires consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903.

Applying this standard, the district court found that the process afforded by Rhode

Island was inadequate since it failed to provide the judgment debtor with prompt and adequately informative notice, advising her not only that her property had been attached but of the relevant exemptions and of the means available for asserting them. Current state procedure also lacks express provision for a prompt post-attachment hearing at which to assert any exemption. The district court concluded that any burden imposed on creditors and on the state courts by procedures of this type was outweighed by the interest of a judgment debtor, like Dionne, in avoiding or, at least, minimizing, the serious consequences of an erroneous deprivation of her property. 583 F.Supp. at 315–19.

The district court did not, as it made clear in an addendum to its opinion, require that notice and hearing be provided *before* an attachment take place. 583 F.Supp. at 319–20. Like the Third Circuit in *Finberg*, it conceded that the process due a debtor *after* judgment was less than that due before judgment. To that degree, the lower court's opinion was not inconsistent with the result in *Endicott Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), a 60-year-old case in which the Court held that the Constitution did not require that a judgment debtor be afforded notice and hearing before the issuance of an execution against his property. *Endicott Johnson*, of course, predated more recent due process cases dealing with garnishment in other contexts. *Compare North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975) (notice and hearing required before pre-judgment garnishment of bank account); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (before pre-judgment re-

plevin of goods); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (before pre-judgment garnishment of wages). *But see Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (prior notice and hearing not required before pre-judgment sequestration of goods when procedure contains other safeguards—writ was issued by a judge, creditor was required to post bond, notice was received after the seizure and immediate opportunity to challenge the writ was afforded).

Relying on *Endicott Johnson*, defendant insists that not only is a judgment debtor not entitled to notice and hearing *prior* to an attachment, he is entitled to no further process thereafter. Defendant points to sweeping language in *Endicott Johnson* to the effect that,

> the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take "notice of what will follow," no further notice being "necessary to advance justice."

266 U.S. at 288, 45 S.Ct. at 62.

But we believe this expansive language is no longer the law given the more recent Supreme Court precedent in the area of property sequestrations and due process.[10] As respects the judgment debtor's rights in

---

**10.** Commentators and cases alike have questioned the continued vitality of *Endicott* in light of the modern due process decisions. *See Finberg*, 634 F.2d at 56–58; *Brown v. Liberty Loan Corp.*, 539 F.2d at 1365–69; *Harris v. Bailey*, 574 F.Supp. 966, 969 (W.D.Va.1983); *Deary v. Guardian Loan Co., Inc.*, 534 F.Supp. 1178, 1185–86 (S.D.N.Y.1982). *See also* R. Alderman, *Default Judgments and Postjudgment Remedies Meet the Constitution: Effectuating Sniadach*

*and its Progeny*, 65 Geo.L.J. 1 (1976); D.W. Dunham, *Post-judgment Seizures: Does Due Process Require Notice and Hearing*, 21 S.D.L.Rev. 78 (1976); Comment, *Postjudgment Garnishment in Georgia: Acting Largely in the Dark*, 12 Ga.L.Rev. 60 (1977); Note, *Pennsylvania's Postjudgment Garnishment Procedures Violate the Due Process and Supremacy Clauses*, 26 Vill.L.Rev. 579 (1980).

property which the law specifically exempts from the judgment creditor's grasp, the district court correctly looked to the balancing approach of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. The exemption under 42 U.S.C. § 407, and other statutory exemptions, establish a congressionally mandated property right with respect to which a judgment debtor is entitled to such procedural protections as are reasonable and appropriate. As the Third Circuit observed in *Finberg,* the "judgment represents only an adjudication of [the debtor's] liability on a monetary debt, not a transfer to [the creditor] of title to any particular item of [the debtor's] property." 634 F.2d at 58.

We add that it is perfectly consistent with *Mathews* not to require notice or hearing *before* a post-judgment attachment. *See Brown v. Liberty Corporation of Duval,* 539 F.2d at 1366. *Cf. Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406. Where the creditor's interest has been adjudicated, and a favorable judgment entered, it is reasonable that the creditor's right to collect in the most effective way should be given great weight. The *Endicott Johnson* Court's comment continues to have validity: "if notice were given the judgment debtor before issuing the garnishment, 'the very advantage sought by the writ would possibly be of no avail, as a disposition could be made of the funds or property before service could be had.' " 266 U.S. at 290, 45 S.Ct. at 63.

■ But while, for purposes of due process calculus, the judgment greatly strengthens the creditor's position, it does not erase all consideration for the debtor with respect to property which the law forbids the creditor to attach in satisfaction of the debt. The debtor is surely entitled to those procedural safeguards which can be afforded without undermining the credi-

tor's adjudicated rights. Once the attachment is made, removing the possibility that the debtor will secrete his assets, the debtor must receive and be notified of a timely opportunity to challenge any sequestration of his property which the law makes unattachable. *See Finberg,* 634 F.2d at 59–62; *Harris v. Bailey,* 574 F.Supp. 966, 970–71 (W.D.Va.1983); *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178, 1186 (S.D.N.Y. 1982). This is required because an unlawful attachment of the debtor's exempt property affects the debtor's rights in a way in which the judgment does not. *See Griffin v. Griffin,* 327 U.S. 220, 229, 66 S.Ct. 556, 560, 90 L.Ed. 635 (1945).

We thus turn to the question of the adequacy of present Rhode Island procedures in protecting the debtor against the risk of wrongful attachment of otherwise exempt property.

As we have seen, Rhode Island law is silent as to any right of a judgment debtor to be heard after an attachment is made. It is even unclear if the debtor must be notified of the bare fact of the attachment,[11] and even if he is so notified (as occurred here) any notice would be limited to that fact alone, and would not enlighten the debtor as to his rights and remedies. While it is not unusual for people to need a lawyer's help to understand their situation and any available remedies, we think that due process in this context—which involves destitute people whose property has suddenly been seized as well as exemptions pertaining to life's basic necessities—requires that Rhode Island provide and spell out procedural rights and remedies more clearly than it has yet done.

Defendant argues that the absence of a specific notice and hearing provision is offset by the existence of R.I.Gen.Laws § 9–21–2 [12] and R.I. District Court Rule

---

**11.** Compare the district court's finding "it is apparent ... that there is no required notice of the attachment at all" with R.I.Gen.Laws § 10–5–11 and R.I. District Court Rule 4(j)(6). At the time this case was tried, R.I.Gen. Laws § 10–5–2 authorized a post-judgment attachment "without any further hearing by the court or notice to the defendant." It is unclear to what extent this

obviated any need for post-attachment notice. The words "or notice" have since been deleted. *See* note 3, *supra.*

**12.** This statute provides:

 **9–21–2. Control retained over judgment or decree.**—On motion and upon such terms as are just, a court may relieve a party or his

60(b).[13] These general enactments, supplemented by the advice of counsel, are said to be adequate substitutes for more specific provisions. The district court conceded that an attachment of federally exempt property "would qualify as a reason for relief under § 9–21–2(6)." 583 F.Supp. at 317.

But the district court also concluded that the opportunity for hearing afforded by such a statute would be of little avail without adequate notice. 583 F.Supp. at 318. Moreover, in the case of judgment debtors such as these, who are poor and have minor dependents, *Finberg*, 634 F.2d at 62, for their right to a hearing to be meaningful, the hearing opportunity must be afforded shortly after the attachment—indeed, it should be a priority matter. As the Supreme Court has said, it is not enough to provide a party with an opportunity to be heard: the hearing must be provided "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The interest of a welfare recipient not to be deprived of his benefits is an important one. *See Goldberg v. Kelly*, 397 U.S. at 264, 90 S.Ct. at 1018. *See also Sniadach v. Family Finance Corp.*, 395 U.S. at 337–38, 89 S.Ct. at 1821. To the needy heads of families and children dependent upon social security or other benefit programs, even the short-term deprivation of their main or only source of support can have disastrous consequences. Nothing we have been shown indicates that the general hearing rights under section 9–21–2(6) can be counted upon to produce an immediate hearing. Even assuming the debtor is actively represented by an able attorney, one might expect that it would be fortuitous whether the state judge before whom a hearing is sought treated the matter as requiring immediate attention, absent any provision of law specifying the debtor's procedural rights or, indeed, that he had any such rights.

In its brief, amicus argues that judgment debtors are not wholly devoid of protection,

---

13. This rule provides:

**60. Relief from judgment or order.—**
(a) ....
(b) Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under applicable law; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and not more than one (1) year after the judgment, order or proceeding was entered or taken.

legal representative from a final judgment, order, decree, or proceeding entered therein for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
(6) any other reason justifying relief from the operation of the judgment.
The motion shall be made within a reasonable time, and not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from judgment shall be by motion as prescribed in these rules or by an independent action.

in light of the other features of the post-judgment garnishment process. Amicus points out that the trustee is itself liable for any exempt funds withheld from the debtor on account of the attachment. But the fact that the trustee may be responsible to the debtor for any exempt funds wrongfully attached does not seem to us to meet the problem. In this case the bank did, in fact, withhold the funds even though most or all of them were exempt. In order to seek redress from the trustee, the debtor would have to initiate a legal proceeding, a rather impractical expedient for an insolvent person seeking to recover a relatively small amount of money.

In sum, we are in general agreement with the district court's conclusion that Rhode Island has not provided judgment debtors whose property it permits creditors to seize unilaterally by writ of attachment with sufficient, defined procedural process to meet the requirements of the due process clause of the fourteenth amendment.

■ We disagree with one aspect of the district court's opinion. We do not agree that, to be constitutional, the notice provided to a judgment debtor after attachment must inform him of *all*, or even close to all, of the available exemptions. In a somewhat analogous situation, the Court has said that due process requires notice to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In the present situation we think the debtor must be informed of the attachment and of the availability of a prompt procedure to challenge the attachment, *see Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14–15, 98 S.Ct. 1554, 1562–63, 56 L.Ed.2d 30 (1978), together with the fact, generally stated, that there are certain exemptions under state and federal law which the debtor may be entitled to claim with respect to the attached property. The state, however, is not required to supply the debtor with a "laundry list" of statutory exemptions. The latter requirement, we think, gives insufficient weight to the state's interest in avoiding overly burdensome requirements. *See Mathews v. Eldridge*, 424 U.S. at 347–49, 96 S.Ct. at 908–909. We know of no parallel situation where the due process clause has been held by the Supreme Court to mandate judicial enactment of a kind of "truth in lending" provision. We are persuaded by the dissenters in *Finberg v. Sullivan* that a detailed list of state and federal exemptions is neither required by the Constitution nor would it, in the final instance, be useful to the debtors. *See* 634 F.2d 83–86 (Aldisert, J., dissenting); *id.* at 93–94 (Weis, J., dissenting). A detailed requirement of this type—which would have to be constantly updated whenever state or federal law was revised—contradicts the spirit of modern civil procedure which encourages notices to be effected in a single, concise and direct manner. *See, e.g.*, Fed.R.Civ.P. 8; *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). In any case, while of course the state is free to adopt such an elaborate requirement if it wants, we do not think the Constitution compels it.

Otherwise we affirm the remedy ordered by the district court, which leaves to state authorities, including state judicial authorities, the revising of state law to provide for constitutionally sufficient notice and hearing requirements. This can be simply done, in a variety of different ways, and it is preferable that state officials, not the federal court, take the laboring oar. All that is required is that the basic principles just discussed be factored into state-mandated procedures.

## V. SUPREMACY CLAUSE

Besides holding that that the challenged procedures violated plaintiff's due process rights, the district court held they also violated the supremacy clause. The court concluded that the challenged procedures "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," under the test

enunciated in *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Other courts have reached a similar result. *See Finberg v. Sullivan*, 634 F.2d at 62–63; *Harris v. Bailey*, 574 F.Supp. at 972; *Deary v. Guardian Loan Co., Inc.*, 534 F.Supp. at 1188–89.

■ The purpose of the exemption created by Congress in 42 U.S.C. § 407 is to protect social security beneficiaries from creditors' claims. *Department of Health and Rehabilitative Services v. Davis*, 616 F.2d 828, 831 (5th Cir.1980). We agree with the district court that the procedural defects described above reduce the likelihood that section 407 will be observed. Whether or not these inadequacies constitute a violation of the supremacy clause is perhaps a more difficult theoretical question which we need not address in view of our determination that they, in any case, violate due process.

## VI. CLASS CERTIFICATION

On cross-appeal, plaintiff challenges the denial of class certification. She claims the district court erred in applying a "necessity requirement" to deny her petition for class certification under Fed.R.Civ.P. 23(b)(2).[14]

■ Class certification, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court. *Califano v. Yamasaki*, 442 U.S. 682, 703, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979). *See also Lamphere v. Brown University*, 553 F.2d 714, 719 (1st Cir.1977). Where the district court has not operated under any erroneous legal premises in its application of the requirement of the rule, its decision will be overturned only upon a showing that it abused this discretion. *DeGrace v. Rumsfeld*, 614 F.2d 796, 809 n. 12 (1st Cir.1980).

The "necessity requirement" challenged by plaintiff refers to a practice, followed by several circuits, of denying class certifica-

tion under Rule 23(b)(2), when a class is not needed to obtain the same relief. In *Galvan v. Levine*, 490 F.2d 1255 (2d Cir.1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), one of the leading cases in this area, plaintiffs were two Puerto Ricans who were adversely affected by a policy of the New York State Industrial Commission denying unemployment compensation benefits to persons who left the New York labor market area and moved to an area of persistent, high unemployment. Plaintiffs alleged that, as applied, this policy was used to bar Puerto Ricans who, like themselves, worked in largely seasonal jobs in New York and returned to Puerto Rico when without work there. They moved for class certification under Fed.R.Civ.P. 23(b)(2). The district court denied the motion. In an opinion by Judge Friendly, the Second Circuit affirmed, holding that a class action was unnecessary:

> [I]nsofar as the relief sought is prohibitory, an action seeking declaratory or injunctive relief against state officials on the ground of unconstitutionality of a statute or administrative practice is the archetype of one where class action designation is largely a formality, at least for the plaintiffs. As we have recently noted, what is important in such a case for the plaintiffs or, more accurately, for their counsel, is that the judgment runs to the benefit not only of the named plaintiffs but of all others similarly situated, as the judgment did here. The state has made it clear that it understands the judgment to bind it with respect to all claimants, indeed even before the entry of the judgment it withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy.

490 F.2d at 1261 (citations omitted).

Other courts have followed this approach. *See James v. Ball*, 613 F.2d 180,

---

**14.** This rule provides:

23(a) ...

 (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) ...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding relief with respect to the class as a whole.

186 (9th Cir.1979); *Sandford v. R.L. Coleman Realty Co.,* 573 F.2d 173, 178 (4th Cir.1978); *Craft v. Memphis Light, Gas & Water Division,* 534 F.2d 684, 686 (6th Cir.1976), *aff'd on other grounds,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1977); *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach,* 493 F.2d 799, 812 (5th Cir.1974); *Martinez v. Richardson,* 472 F.2d 1121, 1127 (10th Cir. 1973). However, some circuits have refused. *See contra Vickers v. Trainor,* 546 F.2d 739, 747 (7th Cir.1976); *Fujishima v. Board of Education,* 460 F.2d 1355, 1360 (7th Cir.1972). And the approach has been criticized by some commentators. *See, e.g.,* G. Rutherglen, *Notice, Scope and Preclusion in Title VII Class Actions,* 69 Va.L. Rev. 11, 17–19 (1983); Note, *The Necessity Doctrine: A Problematic Requirement for Certification of Rule 23(b)(2) Class Actions,* 8 Hofstra L.Rev. 1023, 1046 (1980); Note, *The "Need Requirement": A Barrier to Class Actions Under Rule 23(b)(2),* 67 Geo.L.J. 1211, 1236 (1979).

■ We agree with those circuits which deny Rule 23(b)(2) certification where it is a formality or otherwise inappropriate. However, we prefer not to speak of a "necessity requirement," since this suggests some kind of mechanical classification, whereas the justification for denying class certification rests on the particular circumstances. One factor that a court may properly take into account is the fact—if it be a fact—that the same relief can, for all practical purposes, be obtained through an individual injunction without the complications of a class action. But this does not mean that "certification of a (b)(2) class action is purely discretionary, or that the Rule requires showing a special need apart from what can be found in traditional equity and declaratory judgment jurisprudence." 3 B.J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.40[3], at 23–296, 23–297 (2d ed.1982). The language of Rule 23(b)(2) is reasonably clear: whether the action should be maintained as a class action depends on the *appropriateness* of injunctive or corresponding declaratory relief with respect to the class as a whole. Thus, when the same relief can be obtained without certifying a class, a court may be justified in concluding that class relief is not "appropriate." *Id.* at 23–297 n. 13.

■ There may, however, be situations where a class certification under Rule 23(b)(2) will arguably be unnecessary, but where other considerations may render a denial of certification improper. This could be the case, for example, where there is a danger that the individual claim might be moot, *see Hoehle v. Likins,* 538 F.2d 229, 231 (8th Cir.1976); *Westcott v. Califano,* 460 F.Supp. 737, 746 (D.Mass.1978), *aff'd,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979); *cf. Sosna v. Iowa,* 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975) (class action may continue although representative's individual claim has become moot); where the good faith of the loser cannot be fairly presumed, *see Percy v. Brennan,* 384 F.Supp. 800, 811 (S.D.N.Y. 1974), or where class certification does not impose any significant burden on the court, *see Penn v. San Juan Hospital,* 528 F.2d 1181, 1188 (10th Cir.1979). In sum, we do not accept the concept of a strict "necessity requirement" under Rule 23(b)(2); rather, in cases like this where the district court denies certification, we shall look to the discretion that the district court enjoys under the rule to deny class certification should it reasonably determine that class relief is not "appropriate."

■ Here we find no abuse of discretion in the court's denial of class certification on the ground that any injunctive or declaratory relief will inure to the benefit of all those similarly situated. The injunction forbids the defendant, as Chief Clerk of the District Court of the State of Rhode Island, "from issuing Writs of Attachment pursuant to the existing forms and procedures insofar as they are inconsistent with this opinion." While apparently some writs may have been issued shortly after this injunction, the practice has now ceased and we understood at appellate argument that the Chief Clerk is issuing no more writs in any post-judgment attachment cases. Un-

der the circumstances, we see no practical need for class certification. Plaintiff's claim was not moot, and plaintiff was represented by an attorney from Rhode Island Legal Services, Inc., an office that can be expected to maintain an ongoing interest in seeing that the decree is enforced. The court could reasonably assume the good faith of a defendant such as the Chief Clerk of a state court especially given his express willingness to follow the court's injunction. There is some precedent in this circuit for nonclass relief in cases of this type. *See, e.g., Bay State Harness Horse Racing and Breeding Association, Inc. v. PPG Industries, Inc.*, 365 F.Supp. 1299 (D.Mass.1973) (three-judge court).

*The judgment of the district court, as modified by this opinion in respect to the lack of any need to list all federal and state exemptions in the required notice, is affirmed.*