## Gaito, Appellant, *v.* Pittsburgh.

Argued October 9, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Hymen Schlesinger,* for appellant.

*Thomas E. Barton,* Assistant City Solicitor, with him *Louis Dadowski, Jr.,* Assistant City Solicitor, *J. Frank McKenna, Jr.,* City Solicitor, and *Maurice B. Wechsler,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 11, 1957:

On February 5, 1951, Mrs. Ella M. Gaito, who lived at 1313 Boyle Street in the City of Pittsburgh, fell on the sidewalk in front of 1311 Boyle Street, next door. She averred that her fall was due to accumulated ridges of ice and snow on the sidewalk. She sued the City of Pittsburgh which brought in the property owner, Walter Eyerman, as an additional defendant. At the ensuing trial the jury returned a verdict for the defendants and the plaintiff has appealed for a new trial.

The appellant claims various trial errors. She argues firstly that the Trial Judge should not have submitted the question of contributory negligence to the jury because the plaintiff had not indicated that she had in any way contributed to the happening of the accident. We are satisfied that the Trial Judge was entirely justified; in fact, required, under the facts of the case, to have the jury pass on the issue of contributory negligence. We regret, however, that in submitting that issue, the able and learned Trial Judge inadvertently stated that the plaintiff was "called upon to exercise a very high degree of care in using the sidewalk." Of course, what the Court meant was that the plaintiff was called upon to use care commensurate with the danger involved, and such care would, of course, have to be the due care which the circumstances required. With snow and ice on the ground the due care would naturally be greater than the care required

when streets are dry and conditions underfoot are normal. But the Court used the phrase "very high degree of care," a phrase which has acquired a certain connotation in the law and which, if applied to a plaintiff, would call for a standard of caution and wariness which goes beyond normal prudence.

In the case of *Steck v. City of Allegheny*, 213 Pa. 573, 576, the plaintiff was injured when he slipped on accumulated ice on a sidewalk. Justice MESTREZAT, in discussing the care required of the plaintiff in using the sidewalk since he knew of the presence of the ice, said: "While, however, such conditions may not of themselves prevent the use of a street they nevertheless impose upon the person using it a higher degree of care than if the street were free from obstructions. In such cases the party traveling the street must use that degree of care demanded by the circumstances of the particular case." It will be noted here that Justice MESTREZAT did employ the phrase "higher degree of care," but of course he was referring to a higher degree of care than that which would be called for when walking conditions are normal. The noted jurist laid down the standard of care required in cases of this kind when he said: "If he knew of the defect, it was his duty to avoid it if reasonable care would enable him to do so."

The Trial Judge by the unfortunate oversight of using the phrase "very high degree of care" makes the granting of a new trial imperative.

It should be noted on the retrial of the cause that if the matter again becomes an issue, defendant's counsel is not to be permitted to ask the plaintiff whether her daughter had not been sent to Philadelphia because she was "incorrigible," unless, of course, the facts warrant such a question which they did not in the last trial. The plaintiff testified that, because of her in-

juries resulting from the accident, she had been compelled to ship her daughter Rose to Philadelphia to be cared for by another daughter living in that city. Defendant's counsel, in cross-examining the plaintiff, asked: "Isn't it a fact, Mrs. Gaito, that your younger daughter, so far as you were concerned, had become incorrigible, that you borrowed $10 to send her to Philadelphia to your daughter, and that that's why she went to Philadelphia?"

The word "incorrigible" when applied to a child, denotes a condition of profligacy and delinquency which cannot help but reflect unfavorably against the parent. Of course, if the plaintiff's daughter had actually been adjudicated incorrigible and it was the fact of her incorrigibility which necessitated her transference to Philadelphia, it would be entirely proper for defendant's counsel to ask the question he did. Otherwise the defendant would be injured to the extent that the jury believed the truth of the plaintiff's assertion that her tortious physical condition prevented her from caring for her child. It so happened, however, that there was no evidence that the child was incorrigible. A witness was called to corroborate the inference which defendant's counsel had provoked, but it developed that what the plaintiff had said was that the daughter was "beyond control." There is a vast difference between incorrigibility and uncontrolability.

We are satisfied from the record that the other rulings complained of by the plaintiff were correct.

Judgment reversed with a v.f.d.n.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.