# SPRINGDALE FARMS, INC. *v.*
# McILROY BANK & TRUST

83-239

663 S.W.2d 936

### Supreme Court of Arkanss
### Opinion delivered February 13, 1984

*Cypert & Roy,* for appellant.

*Pettus, Johnson & Gibson,* by: *Phyllis Hall Johnson,* for appellee.

JOHN I. PURTLE, Justice. The chancellor upheld the Arkansas prejudgment attachment law in a dispute between creditors, one with a prejudgment attachment and the other with a subsequent judgment garnishment. On direct appeal it is argued that the Arkansas prejudgment statutes [Ark. Stat. Ann. § 31-101 et seq. (Repl. 1962)] are unconstitutional. On cross appeal the argument is that appellant in the present case did not have standing to challenge the constitutionality of the prejudgment statutes. We hold that the appellant had standing to challenge the law and that the prejudgment statutes are valid.

Springdale Farms, Inc. (appellant) filed suit on account against Buford B. Wiley, Jr. and C-O-Y-O-T-E Properties, Inc. in the Washington County Circuit Court on September 2, 1981. Eleven months later, August 2, 1982, McIlroy Bank and Trust (appellee) filed suit in the Washington County Chancery Court against the same parties seeking foreclosure on certain items of property and judgment on a promissory note. On the same day McIlroy caused the circuit court clerk to issue a prejudgment writ of specific attachment against Mexican Original Products, Inc. McIlroy filed the affidavit and bond required by the attachment statutes and obtained results by attaching two checks owed by Mexican Original to Wiley. The bank obtained several additional writs of attachment but never filed additional bond or affidavits with the clerk.

Appellant obtained judgment on its complaint in circuit court October 1, 1982, and two weeks later caused a

writ of garnishment to issue upon the judgment against the sheriff and Mexican Original. The sheriff answered that he had the checks obtained from Mexican Original on the bank's attachment. Appellee moved to make appellant a respondent in the chancery case. Appellant argued that the circuit court had subject matter jurisdiction but it nevertheless alleged the right to possession of the checks which were interpleaded into the court by the sheriff. On January 18, 1983, the bank obtained judgment against Wiley on service had pursuant to the long arm statute. On January 20, 1983, the chancellor upheld the prejudgment attachment and awarded the checks to appellee.

We first consider the cross appeal argument that appellant did not have standing to assert the constitutional claim of Wiley. We find that appellant had standing in its own right to challenge the constitutionality of the prejudgment attachments. Arkansas Stat. Ann. § 31-157 (Repl. 1962) authorizes intervention by "any person . . . disputing the validity of the attachment, or stating a claim to the property or an interest in, or a lien on it. . . ." In the early case of *Rice* v. *Dorrian*, 57 Ark. 541, 22 S.W. 213 (1893) this court held:

> So we think it clear that a junior attacher can, for the purpose of protecting his rights in the property attached, dispute the validity of a prior attachment, and establish the right of his own to precedence, by showing that the first exists without authority or is not allowed by law.

Appellant had standing to attempt to show appellee's attachment was "not allowed by law" and was therefore without authority. The cross appeal must be denied.

We now consider the question of whether the Arkansas statutes on prejudgment attachment are constitutional. In considering this question it becomes necessary to examine four United States Supreme Court decisions. *Sniadach* v. *Family Finance Corp. of Bay View*, 395 U.S. 337 (1969); *Fuentes* v. *Shevin*, 407 U.S. 67 (1972); *Mitchell* v. *W. T. Grant Co.*, 416 U.S. 600 (1974); and *North Georgia*

*Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601 (1975). In *Sniadach* the Court held the Wisconsin prejudgment wage garnishment statutes to be unconstitutional because they did not provide for notice and prior hearing. In *Fuentes,* the wage garnishment holding of *Sniadach* was expanded to include prejudgment replevin. The Florida and Pennsylvania replevin statutes were held unconstitutional for lack of due process. These statutes were invalidated because they afforded no opportunity for a hearing or prior notice. Both statutes allowed the debtor to retake the goods by posting bonds.

The next case considered by the United States Supreme Court was *Mitchell* v. *W. T. Grant Co.,* supra. Here the Louisiana sequestration statute was upheld. Although not overruling Sniadach and *Fuentes,* the Court held that prejudgment attachments are not always unconstitutional. The Louisiana statute passed the constitutional test because it had adequate "safeguards." Mitchell purchased goods from Grant who retained a vendor's lien to secure the unpaid purchase price. Also, the Louisiana statute would not allow attachment based upon "conclusory allegations." The statute required the petitioner to state "specific facts" in the affidavit for sequestration. These facts were presented to a judge after a bond was filed. The debtor was entitled to an immediate hearing on repossession and the burden was upon the creditor at the hearing to prove the grounds for attaching the property. The debtor could regain possession without a hearing by posting bond. He was also entitled to regain the property plus damages and attorney fees if the writ were ultimately dissolved.

The last major case we must examine is *North Georgia Finishing* v. *Di-Chem, Inc.,* supra. In that case the Georgia prejudgment garnishment statute was held to be violative of the due process clause because it did not have the "safeguards" contained in *Mitchell.*

Out of these four cases a rather loose formula emerges. There are six general safeguards necessary for a valid prejudgment seizure. They are: 1) the affidavit for the writ of attachment must allege specific facts which justify attach-

ment; 2) the petitioner must post a bond guaranteeing the defendant damages if the writ is dissolved; 3) the respondent or defendant must be allowed to regain possession by posting bond; 4) requisite proof of the need for a writ must be made before a judge; 5) an immediate hearing must be allowed, and at the hearing, the burden of proof is with the petitioner to justify the attachment; and 6) if the writ is dissolved, damages and attorney fees must be awarded to the debtor.

If our attachment statute is to survive it must contain the above safeguards. Attachment and garnishment statutes are contained in Title 31 of the Arkansas statutes. Section 31-101 gives the grounds for attachment before judgment. There are nine grounds listed, one of which states: "6. Is about to remove, or has removed, his property, or a material part thereof, out of this State, not leaving enough therein to satisfy the plaintiff's claim, or the claim of said defendant's creditors . . ." The affidavit of appellee in this case met the first requirement because it alleged everything in subsection 6 above and alleged other specific facts as well.

The second step in the formula requires the plaintiff or petitioner to post a bond guaranteeing the debtor's damages in the event the attachment is dissolved. That was done by the bank in the present case.

Arkansas's statutes provide that the debtor, by posting bond, may retain possession (§ 31-124) or may regain possession (§ 31-136), thereby meeting requirement number three.

The weakest point of the Arkansas statutory scheme is that it does not exactly meet the fourth step in the formula because the writ is not granted by a judge. This prong of the test is really a balancing of the interests involved, and an attempt to provide adequate safeguards. Another consideration is whether there is a greater than usual risk to the creditor and whether the creditor's interest has been heightened. In other words the question is whether the facts presented cause the creditor's rights to be unusually threatened. The very specific and detailed factual require-

ments set out in Ark. Stat. Ann. § 31-101 seem to offer adequate safeguards to the debtor that his property will not be taken without ample justification. By the same token, an affidavit conforming to these statutory demands indicates the creditor's rights have not only been heightened, but also that his interest is in danger of being destroyed. In the present case the debtor had left the state and did not object to the attachment. Even so, it is our opinion that the issuance of the writ of attachment by the circuit clerk meets the "safeguards" test and is not in violation of due process. Because our statute requires a recital of specific facts by one with personal knowledge, the Clerk's role rises above that of a mere court functionary.

Fifth, there must be a hearing immediately after seizure on the matter of possession with the burden of proof resting on the creditor. Under § 31-124 the debtor may retain possession without a hearing by posting the required bond. Section 31-128 allows the debtor, upon reasonable notice, at any time to move to discharge the attachment. Also, § 31-149 states the debtor may "at any time before the attachment is sustained" move to discharge the attachment.

The sixth requirement is that if the writ is dissolved there must be damages and attorney fees awarded to the debtor. This requirement is clearly met by § 31-152 which requires the court or jury to assess damages for the defendant if the attachment is not sustained.

Professor Nickles [Assistant Professor of Law, University of Arkanss (Fayetteville)] has written a lengthy and exhaustive study, *Creditors' Provisional Remedies and Debtors' Due Process Rights: Attachment and Garnishment in Arkansas*, 31 Ark. L. Rev. 607 (1978), which is enlightening on the matter of prejudgment attachment in Arkansas. He reached a conclusion not inconsistent with this opinion.

We hold that prejudgment attachment by a creditor pursuant to the statutes cited above does not deprive the

debtor of constitutional due process or any other constitutional right.

Affirmed on direct and cross appeal.