IN THE MATTER OF Loren EVATT, An Incapacitated Person

86-262                                    722 S.W.2d 851

Supreme Court of Arkansas
Opinion delivered February 2, 1987

Griffin J. Stockley, Central Arkansas Legal Services, for appellant.

Steve Clark, Att'y Gen., by: David S. Mitchell, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. ■ This appeal tests the constitutionality of the temporary guardianship statute, Ark. Stat. Ann. § 57-840 (Supp. 1985). We hold that the statute violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.

We only need to set out a few of the facts in order to discuss the due process issue. The probate court, acting pursuant to a provision in the statute, signed a ninety-day *ex-parte* order of temporary guardianship of the person. The statute required no notice before the *ex-parte* hearing, and none was given. After the hearing the Sheriff picked up the ward and detained him in the local jail, as ordered. The statute does not require an immediate hearing after the ward's detention, and no such hearing was held. After two days in jail an involuntary civil proceeding was held and the ward was committed to the Arkansas State Hospital. The procedure involving the civil commitment proceeding is not questioned.

On appeal the ward contends that the temporary guardianship statute denied him procedural due process because it authorized the granting of the guardianship without notice, and, after guardianship was granted and after his detention, it did not authorize a review hearing, or safeguard hearing, with the right to have counsel and the right to cross-examine witnesses. The latter part of the argument is meritorious.

In *Matthews* v. *Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court of the United States identified the components of procedural due process and mandated a balancing of the following considerations:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The private interest affected by official action in a temporary guardianship of the person is the right to control the ward's person for up to ninety days. In a temporary guardianship of the estate it is the right to control the ward's property for up to ninety days. In essence, the interests affected are the freedom and property of the ward. To place a guardian in control of these interests is to deprive a ward of basic rights. Manifestly, the interests affected are sufficient to require procedural due process.

The risk of an erroneous deprivation of the ward's freedom and property at the *ex parte* hearing is without meaningful statutory procedural safeguards.

The statute does not contain a meaningful notice provision. It simply provides: "If made without notice, the temporary guardian shall forthwith give to the incapacitated person notice of the appointment."

Such a provision allows the notice to be given by the guardian, who may have interests adverse to the ward. It does not define "forthwith" in terms of hours or days. Most fundamentally, it only requires notice that one has already been declared incapacitated. Obviously, most wards will have been told this by the time the Sheriff incarcerates them. In effect, the notice is meaningless in terms of procedural due process. More importantly, the statute does not provide the ward with the right to be present at a subsequent hearing where he can have counsel and cross-examine those who caused him to lose his freedom or control over his property, or both.

The foregoing defects in procedural process must be weighed against the government's interests, including the function involved and the fiscal and administrative burdens which safeguard procedures would require.

In temporary guardianship proceedings the State exercises its benevolent *parens patriae* power on behalf of incapacitated persons much as the police power could be used to pick up and temporarily shelter a lost infant. Clearly, the State has an important *parens patriae* interest in seeing that its incapacitated persons do not harm themselves or others, or do not waste their assets.

Situations may well occur when there is truly an imminent danger to the life or health of an incapacitated person or imminent danger of loss, damage or waste of that person's property. In those emergency situations, advance notice could defeat the purpose of the statute because the incapacitated person, when given notice that a hearing was about to be held, might run away, or harm himself or others, or waste his property before the hearing could be held. Accordingly, under the balancing test, we hold that advance notice is not necessary to comply with procedural due process.

However, under the terms of the statute, as presently written, a person could be erroneously detained for as long as ninety days, and there are no procedural safeguards to prevent such a tragedy. Other comparable statutes have procedural safeguards which have proven administratively feasible. For example, the civil commitment statute, Ark. Stat. Ann. § 59-1406(a) (Supp. 1985), authorizes immediate confinement to avoid suicide or homicide, but then provides for a hearing within seventy-two hours at which time the detained person is given the full panoply of procedural due process, including the right to an attorney and cross-examination. Similarly, in cases of emergency protective custody, Ark. Stat. Ann. § 59-1308(1) (Supp. 1985) provides that the State, without notice, may take protective custody of an endangered adult, but a hearing with procedural process must be held within forty-eight hours. The lack of such a comparably feasible procedural safeguard in the statute at issue constitutes a denial of due process.

Even if the statute provided for a safeguard hearing to

meet the due process requirements, the statute would fail because of the lack of meaningful notice of such a hearing.

The notice requirement in comparable legislation, such as the regular guardianship statute, Ark. Stat. Ann. § 57-835(e)(1) (Supp. 1985), provides that the incapacitated person must be served with notice of the hearing which informs the respondent that he has a right to be represented by counsel, to present evidence, to cross-examine adverse witnesses, to remain silent, to be present, and to require attendance of the professionals who prepared the required evaluation. In addition, the service must be had in the normal manner, and not as provided in the statute at bar in which service is made by the guardian, whose interests could be adverse to the ward. Again, such a statute is administratively feasible.

Accordingly, the temporary guardianship statute, as written, must be struck down as a denial of procedural due process.

Reversed and dismissed.