Barbara McCRORY, Individually, and Thomas McCrory, a
Minor, by His Mother and Next Friend, Barbara McCrory
*v.* Thomas J. JOHNSON, Brad W. Houston, and Jacquetta
Alexander, in Her Official Capacity as Pulaski County
Circuit Clerk

88-19                                                    755 S.W.2d 566

Supreme Court of Arkansas
Opinion delivered July 18, 1988

*James DePriest* and *Griffin J. Stockley*, Central Arkansas Legal Services, for appellants.

*Vaughan and Bamburg*, by: *Keith Vaughan*, for appellees Thomas J. Johnson and Brad W. Houston.

*Ivester, Henry, Skinner & Camp, A Professional Corporation*, by: *Robert Keller Jackson*, for appellee Jacquetta Alexander.

JACK HOLT, JR., Chief Justice. This appeal questions the constitutionality of our prejudgment attachment code provisions, Ark. Code Ann. §§ 16-110-101—16-110-309 (1987). We find them unconstitutional.

The facts of the case are as follows: On September 15, 1986, appellant Barbara McCrory leased a house from appellee Thomas J. Johnson through his rental agent, appellee Brad W. Houston. Under the written lease agreement, McCrory was to pay $600.00 a month for one year. After McCrory failed to pay part of the December rent and all of the January and February rent, Houston placed a note on her door asking her to pay rent or vacate the premises. When she did not respond, he placed a termination notice on the door requesting her to vacate the premises within ten days. Shortly after the ten-day period expired, Houston removed all the personal property (furniture, appliances, and household items) from the residence and deposited it at a local storage facility.

On April 9, 1987, Johnson filed a complaint in Pulaski County Circuit Court alleging that McCrory owed him the sum of $2,940.00 for rent, late charges, and damages to his property. With this complaint, he filed an affidavit for attachment, sup-

ported by bond, alleging that Barbara McCrory was about to remove her personal property (already stored by Houston) from the state. On April 10, the circuit court clerk issued a writ of attachment, which was served on April 30. On May 7, McCrory filed a motion to dissolve the writ, which contained, in part, a prayer for an immediate hearing.

Subsequently, Barbara McCrory, individually and on behalf of her son, Thomas McCrory, filed a counterclaim and an amended complaint and counterclaim against Houston and Johnson alleging, among other causes of action, that they had violated the Arkansas forcible entry and detainer code provisions, Ark. Code Ann. §§ 18-60-301—18-60-312 (1987), by removing her property from the house. The McCrorys also asserted that the actions of Houston and Johnson in attaching the property pursuant to our prejudgment attachment code provisions denied them (the McCrorys) due process of law guaranteed by the fourteenth amendment. The McCrorys asserted that the attachment code provisions are unconstitutional because they do not require that prompt notice of the attachment or of possible state and federal exemptions be given to the debtor and do not make available a prompt hearing at which a debtor can claim exemptions. Additionally, the McCrorys joined appellee Jacquetta Alexander, the Circuit Clerk of Pulaski County, as third-party defendant, alleging that she denied them due process of law by issuing the writ of attachment through her agent.

At a hearing on May 29, 1987, the circuit court, Special Judge Ralph Patterson presiding, sustained the writ of attachment granted in favor of Johnson. In a pretrial order filed on July 29, 1987, the trial court dismissed with prejudice the portion of the McCrorys' counterclaim concerning the constitutionality of our prejudgment attachment code provisions on the basis of this court's holding in *Springdale Farms, Inc.* v. *McIlroy Bank and Trust*, 281 Ark. 371, 663 S.W.2d 936 (1984), that the provisions are constitutional. The trial court also dismissed the claim against defendant Alexander. On July 30, 1987, the trial court, contravening Judge Patterson's decision, discharged the writ of attachment because Johnson had not met his burden of showing, pursuant to Ark. Code Ann. § 16-110-101 (1987), that Barbara McCrory was about to remove or had removed her property, or a material part thereof, from the state.

At the conclusion of the jury trial, the court entered judgment for Johnson against Barbara McCrory for $2,862.40 damages, plus reasonable attorney's fees, interest, and costs and dismissed with prejudice the McCrorys' counterclaim against Johnson and Houston. From this order, the McCrorys appeal.

## I. *TIMELINESS OF APPEAL.*

The appellees assert that the McCrorys' appeal on the constitutionality of the code provisions and on the dismissal of the claim against Alexander should be dismissed as untimely. We disagree.

As previously noted, in a pretrial order of July 29, 1987, the trial court dismissed the McCrorys' claim concerning the constitutionality of our code provisions and also the claim against third-party defendant Jacquetta Alexander. The McCrorys did not file a notice of appeal at this time but instead waited until after the trial court rendered final judgment in the case. Although the notice of appeal was filed within thirty (30) days of the order rendering final judgment, it was not filed within thirty (30) days of the pretrial order.

It is clear we would have dismissed the appeal if the McCrorys had appealed from this intermediate order since such orders are not final and appealable unless Ark. R. Civ. P. 54(b) is utilized. *See Rone* v. *Little,* 293 Ark. 242, 737 S.W.2d 152 (1987); *Kilcrease* v. *Butler,* 291 Ark. 275, 724 S.W.2d 169 (1987); *3-W Lumber Co.* v. *Housing Auth. for the City of Batesville,* 287 Ark. 70, 696 S.W.2d 725 (1985). *See also Mueller* v. *Killam,* 295 Ark. 270, 748 S.W.2d 141 (1988); *Burnley* v. *Mutual of Omaha,* 291 Ark. 185, 723 S.W.2d 363 (1987). Granted, the McCrorys could have asked for certification under 54(b) in order to appeal from these orders. However, they had no duty to do so. The underlying policy of Rule 54(b) is to avoid piecemeal appeals, not encourage them. *Murry* v. *State Farm Mut. Auto. Ins. Co.,* 291 Ark. 445, 725 S.W.2d 571 (1987). Accordingly, the appellees' contention has no merit.

## II. *CONSTITUTIONALITY OF OUR PREJUDGMENT ATTACHMENT CODE PROVISIONS.*

The McCrorys contend that our prejudgment attachment code provisions [Ark. Code Ann. §§ 16-110-101—16-110-309 (1987)] violate the due process clause of the fourteenth amendment because they do not require that prompt notice be given to the debtor of the attachment or of possible state and federal exemptions and do not make available a prompt hearing at which the debtor can claim exemptions. In addition, the appellants challenge our code provisions on the grounds that they create a risk of erroneous deprivation by allowing writs of attachment to be issued by a circuit clerk instead of a judge. All of their contentions have merit.

Before we scrutinize the appellants' claims, we note that they served the office of the Attorney General with copies of their amended complaint and counterclaim in accordance with Ark. Stat. Ann. § 34-2510 (Repl. 1962) [Ark. Code Ann. § 16-111-106 (1987)], which gives the Attorney General the discretionary right to appear in any case where an Arkansas statute is challenged as unconstitutional. The office of the Attorney General declined the invitation by letter to the trial court and did not participate as a party litigant.

In *Springdale Farms, Inc., supra,* we held that our prejudgment attachment scheme was constitutional in that it sufficiently met six procedural due process "safeguards" necessary for a valid prejudgment attachment. These safeguards, which emanate from *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U.S. 601 (1975); *Mitchell* v. *W.T. Grant Co.,* 416 U.S. 600 (1974); *Fuentes* v. *Shevin,* 407 U.S. 67 (1972); and *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 (1969), are as follows:

(1) the affidavit for the writ of attachment must allege specific facts which justify attachment [Ark. Code Ann. § 16-110-106 (1987)];

(2) the petitioner must post a bond guaranteeing the defendant damages if the writ is dissolved [Ark. Code Ann. § 16-110-107 (1987)];

(3) the respondent or defendant must be allowed to regain possession by posting bond [Ark. Code Ann. § 16-110-117

(1987)];

(4) requisite proof of the need for a writ must be made before a judge;

(5) an immediate hearing must be allowed, and at the hearing, the burden of proof is with the petitioner to justify the attachment; and

(6) if the writ is dissolved, damages and attorney's fees must be awarded to the debtor [Ark. Code Ann. § 16-110-131 (1987)].

In so holding, we acknowledged that our statutory scheme did not exactly meet the fourth requirement because it permits writs to be granted by a circuit clerk instead of a judge. Ark. Code Ann. § 16-110-106 (1987). Notwithstanding, we found that our scheme met the "safeguards" test and satisfied due process for the following reason: "Because our statute requires a recital [by the creditor in an affidavit] of specific facts [of the grounds for the attachment] by one with personal knowledge, the Clerk's role rises above that of a mere court functionary." *See* Ark. Code Ann. § 16-110-106 (1987); Ark. Code Ann. § 16-110-101 (1987).

In addition, we found that the fifth safeguard was adequately met because a debtor (1) can retain possession of his attached property by posting a bond under Ark. Stat. Ann. § 31-124 (Repl. 1962) [Ark. Code Ann. § 16-110-117 (1987)]; (2) can, upon reasonable notice to the plaintiff, move at any time to discharge the attachment under Ark. Stat. Ann. § 31-128 (Repl. 1962) [Ark. Code Ann. § 16-110-118 (1987)]; and (3) can move to discharge the attachment at any time before the attachment is sustained under Ark. Stat. Ann. § 31-149 (Repl. 1962) [Ark. Code Ann. § 16-110-130 (1987)].

After *Springdale Farms, Inc.*, we decided *In the Matter of Evatt*, 291 Ark. 153, 722 S.W.2d 851 (1987), in which we held that our temporary guardianship statute was unconstitutional. In this decision, we analyzed the issue of whether the state procedures met procedural due process by utilizing the "balancing of interests" test enunciated in *Matthews* v. *Eldridge*, 424 U.S. 319, 335 (1976):

[I]dentification of the specific dictates of due process

generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Although *Matthews* predated *Springdale Farms, Inc.*, we did not explicitly use the *Matthews* analysis in *Springdale Farms, Inc.*

Other courts utilizing the *Matthews* procedural due process analysis have declared certain postjudgment garnishment or attachment statutes unconstitutional because they did not require notice of possible state or federal exemptions and did not require a prompt hearing at which to claim these exemptions. *Davis* v. *Paschall*, 640 F. Supp. 198 (E.D. Ark. 1986); *Dionne* v. *Bouley*, 757 F.2d 1344 (1st Cir. 1985); *Finberg* v. *Sullivan*, 634 F.2d 50 (3rd Cir. 1980). *See also Clay* v. *Fisher, Inc.*, 584 F. Supp. 730 (S.D. Ohio 1984); *Harris* v. *Bailey*, 574 F. Supp. 966 (W.D. Va. 1983); *Deary* v. *Guardian Loan Co.*, 534 F. Supp. 1178 (S.D.N.Y. 1982); *Betts* v. *Tom*, 431 F. Supp. 1369 (D. Hawaii 1977).

In *Dionne, supra,* the court held that in order for a postjudgment attachment statute to pass constitutional muster, it must require that the debtor be informed of the attachment, of the availability of a prompt procedure to challenge the attachment, and of the fact, generally stated, that there are certain exemptions under state and federal law which he or she may be entitled to claim with respect to the attached property.

In *Davis, supra,* the court held that the Arkansas postjudgment garnishment statutes were unconstitutional because they did not:

> require notice to the judgment debtor informing him of the garnishment, notice of possible state and federal exemptions, a prompt hearing to permit the judgment debtor to claim exemptions, an affidavit from the creditor stating that the writ would not cause the attachment of exempt

funds, or the posting of bond to compensate the judgment debtor for injury in case of a wrongful garnishment.

The facts of the case before us, coupled with the rationale expressed in the recent federal decisions and the explicit use of the *Matthews* balancing test in those cases and in *Evatt, supra*, convinces us that we must reexamine our position in *Springdale Farms*.

Under *Matthews, supra*, a balancing of the interests involved is necessary. The private interest affected in this case by the Arkansas prejudgment attachment procedure is Barbara McCrory's interest in her personal property. This interest is clearly sufficient to require procedural due process.

The risk of erroneous deprivation of a debtor's property interests through the use of the current Arkansas prejudgment attachment code provisions is substantial. First, there is no requirement that the debtor be given immediate notice of the attachment. Ark. Code Ann. § 16-110-111 (1987) merely provides that "the order of attachment shall be executed by the sheriff or other officer without delay."

The facts of the instant case illustrate the inherent deficiency in our procedure. The circuit court issued the writ on April 10, 1987. However, Barbara McCrory was not served until April 30, 1987. Timely notice in this case may well have shortened the length of time in which Barbara McCrory was deprived of her property. Thus, the probable value of this additional procedure in decreasing the risk of an erroneous deprivation is considerable. *See Matthews, supra.*

Secondly, the absence in our prejudgment attachment code provisions of a requirement that prompt notice of possible state or federal exemptions be given to the debtor subjects him or her to an enhanced risk of erroneous deprivation. As in the instant case, a debtor may have property which may be exempt from attachment under state [Ark. Const. art. 9] or federal law. If a debtor fails to receive notice of possible exemptions, the likelihood that he or she will suffer an unwarranted property loss is markedly heightened.

Our postjudgment garnishment code provisions now require that a debtor be given notice of possible state or federal exemptions. *See* Ark. Code Ann. § 16-110-402(1)(A) (Supp.

1988). Our prejudgment attachment scheme should contain the same safeguard since the process due a debtor before judgment is greater than that due after judgment. *See Dionne, supra. See also, Finberg, supra.*

Thirdly, our prejudgment code provisions do not provide a mechanism, as our postgarnishment code provisions do [Ark. Code Ann. § 16-110-402(5) (Supp. 1988)], by which a debtor can receive a prompt hearing to claim exemptions. As noted above, in *Springdale Farms, Inc., supra,* we held that our procedure satisfied the immediate hearing requirement because a debtor (1) can retain possession of his attached property by posting a bond under Ark. Stat. Ann. § 31-124 (Repl. 1962) [Ark. Code Ann. § 16-110-117 (1987)]; (2) can, upon reasonable notice to the plaintiff, move at any time to discharge the attachment under Ark. Stat. Ann. § 31-128 (Repl. 1962) [Ark. Code Ann. § 16-110-118 (1987)]; and (3) can move to discharge the attachment at any time before the attachment is sustained under Ark. Stat. Ann. § 31-149 (Repl. 1962) [Ark. Code Ann. § 16-110-130 (1987)].

These procedures are inadequate to prevent an erroneous deprivation. The availability of a prompt hearing, where the burden of proof is with the petitioner to justify the attachment, is fatally absent. Although Ark. Code Ann. § 16-110-130 allows the debtor, before the attachment is sustained, to move to discharge the attachment, it also provides that "the hearing . . . may be postponed by the court, upon sufficient cause, from time to time." The fact that a debtor can retain possession of his attached property by posting a bond, although helpful to some debtors, is wholly inadequate as a substitute for an immediate hearing, especially for an indigent debtor, who cannot avail herself of this procedure.

Finally, our prejudgment code provisions are deficient because they permit writs of attachment to be issued by a court clerk instead of a judge. As noted above, in *Springdale Farms, Inc., supra,* we held that this procedure met the "safeguards" test and satisfied due process for the following reason: "Because our statute requires a recital [by the creditor in an affidavit] of specific facts [of the grounds for the attachment] by one with personal knowledge, the Clerk's role rises above that of a mere functionary." *See* Ark. Code Ann. § 16-110-106 (1987); Ark.

Code Ann. § 16-110-101 (1987).

Ark. Code Ann. § 16-110-106 provides in pertinent part as follows:

> (a)(1) An order of attachment shall be made by the clerk of the court in which the action is brought in any case mentioned in subdivision (1) of § 16-110-101, where there is filed in his office an affidavit of the plaintiff or of someone in his behalf, showing:
>
> (A) The nature of the plaintiff's claim;
>
> (B) That it is just;
>
> (C) The amount which the affiant believes the plaintiff ought to recover; and
>
> (D) The existence in the action of one (1) of the grounds for an attachment enumerated in subdivision (1) of § 16-110-101. In the case mentioned in subdivision two (2) of § 16-110-101, where it is shown by affidavit or by the return of the sheriff or other officer upon the order for delivery of the property claimed, the facts mentioned in that subdivision must exist.

It is true that this code provision requires more than mere conclusory allegations in the creditor's affidavit, *North Georgia Finishing, Inc., supra,* before a clerk may execute an order of attachment. However, this fact does not alleviate the risk of erroneous deprivation caused by the issuance of a writ without examination by a judge. A judge has the superior ability to determine if the affidavit sufficiently shows (1) the nature of the plaintiff's claim, (2) that it is just, (3) the amount which the affiant believes the plaintiff ought to recover, and (4) the existence in the action of one of the grounds for attachment as enumerated in subdivision (1) of § 16-110-101. Absent a judge's participation or supervision, there is a significant risk that a writ will be issued even though the requirements of the statute have not been met. This danger explains the rationale of *North Georgia Finishing, Inc., supra,* which recognized that the issuance of prejudgment writs of attachment by a judge was an important procedural safeguard necessary to satisfy due process.

The foregoing defects in our code provisions must be

balanced against "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See Matthews, supra.*

The state has a strong interest in providing equitable procedural safeguards which protect the interests of both creditor and debtor. It is clear that requiring notice of attachment and of possible exemptions would not place a great burden on the state. *Dionne, supra.* However, a significant burden would be placed on the state judicial machinery by requiring a prompt hearing and the issuance of writs of attachment by a judge. Notwithstanding, the risk of erroneous deprivation of property interests through the use of the current prejudgment attachment procedure and the benefit of the additional safeguards substantially outweigh the burden incurred due to the additional or substitute procedures.

■ Accordingly, the Arkansas prejudgment attachment code provisions are struck down. *Springdale Farms, Inc., supra,* is overruled to the extent it is inconsistent with this opinion.

## III. *ISSUES ON REMAND.*

### A. *DISMISSAL OF THE CLAIM AGAINST JACQUETTA ALEXANDER.*

The McCrorys contend that the trial court erred in dismissing the claim against circuit court clerk Jacquetta Alexander in that it stated a cause of action under 42 U.S.C. § 1983 (1982). We hold otherwise.

■ A county court clerk can be sued for damages in a § 1983 suit. *See Scott* v. *Dixon,* 720 F.2d 1542 (11th Cir. 1983), *cert. denied,* 469 U.S. 832 (1984). However, a clerk may have either absolute or qualified immunity for acts done in his or her official capacity. Absolute immunity "bars a suit at the outset and frees the defendant official of any obligation to justify his actions," while qualified immunity "is in the nature of an affirmative defense and protects an official from liability only if he can show that his actions did not contravene clearly established statutory or constitutional rights of which a reasonable person in his position should have known." *Gray* v. *Bell,* 712 F.2d 490 (D.C. Cir. 1983), *cert. denied,* 465 U.S. 1100 (1984). *See also Imbler* v. *Pachtman,* 424 U.S. 409 (1976).

■ Clerks who perform ministerial functions, such as filing orders and notifying parties, are entitled only to qualified good faith immunity. *Henriksen* v. *Bentley*, 644 F.2d 852 (10th Cir. 1981). A court clerk who performs a judicial function, such as issuing warrants, enjoys absolute immunity in a § 1983 suit. *Scott, supra. See also Sharma* v. *Stevens*, 790 F.2d 1486 (9th Cir. 1986).

■ Having determined above that a judge, not a clerk, should issue writs of attachment, it follows that the act of issuing such writs is a judicial function. *See Scott, supra.* Thus, Jacquetta Alexander was entitled to absolute judicial immunity. The trial court properly dismissed the claim against her.

## B. *FAILURE TO INSTRUCT THE JURY.*

The McCrorys contend that the trial court erred when it refused to instruct the jury that to the extent section 19 of the lease might be construed to authorize the landlord to reenter the premises upon a default by the tenant and remove the tenant's possessions, such section of the lease was invalid, illegal, and not to be enforced against the tenant. We agree.

■ Section 19 of the lease provided in part that upon default by the tenant, the "lessor may re-enter the premises remove all persons therefrom" and also that the "[l]essor shall have a lien on all buildings and moveable property on the premises belonging to the lessee while rent is in arrears." In *Gorman* v. *Ratliff*, 289 Ark. 332, 712 S.W.2d 888 (1986), we held that lease provisions authorizing self-help by a landlord are illegal and invalid. Therefore, section 19 of the lease, to the extent it allowed self-help by Johnson as landlord, was also illegal and invalid.

The McCrorys proffered the following instruction:

You are instructed to the extent that section 19 of the lease signed by Barbara McCrory and Brad Houston might authorize Mr. Houston to reenter the premises upon a default by Barbara McCrory and eject Barbara McCrory or Thomas McCrory from the premises or remove the possessions of Barbara or Thomas McCrory from the premises, then such section of the lease is invalid, illegal, and shall not be enforced against Barbara McCrory or Thomas McCrory.

The trial court instead gave the following instruction:

> Ms. McCrory has asserted that Thomas J. Johnson and Brad W. Houston have violated Ark. Stat. Ann. 34-1501 which is called the Forcible Entry and Detainer Statute. This statute is concerned with certain obligations and rights of both landlords and tenants.
>
> In order to prove this claim, Ms. McCrory has the burden of proving the following elements:
>
> First, that at the time she was a tenant at 23 Lucy Lane, Brad W. Houston carried away or caused to be carried away property belonging to Ms. McCrory without her permission.
>
> Secondly, that such intentional conduct was a proximate cause of any damages suffered by Ms. McCrory.

It is the obligation of a trial judge to instruct the jury upon the law of the case with clarity and in such a manner as to leave no basis for misrepresentation or mistake. *W.M. Bashlin Co.* v. *Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982). As we stated in *Holiday Inns, Inc.* v. *Drew*, 276 Ark. 390, 635 S.W.2d 252 (1982), quoting *Beevers* v. *Miller*, 242 Ark. 541, 414 S.W.2d 603 (1967):

> Even if the court's general instructions could be said technically to have covered the matter in a general way, it is error to refuse to give a specific instruction correctly and clearly applying the law to the facts of the case, even though the law in a general way is covered by the charge given unless it appears that prejudice has not resulted.

The instruction given to the jury covered the law of the case in a very general and incomplete manner. The jury very well may have been misled or confused by this instruction. The McCrorys' proffered instruction correctly and clearly applied the law to the facts of the case. Therefore, the trial judge erred by not giving this instruction.

The appellees argue that section 19 of the lease was not relevant to the issues in the case. This argument is meritless. The illegality of this section was relevant to the issue of whether the appellees' actions in removing the property were contrary to law

— which is what the McCrorys' counterclaim, in part, was based upon. Furthermore, not only was the entire lease admitted as an exhibit, but also the validity of this section was contested from the beginning of the case.

Additionally, the appellees argue that the proffered instruction was not a correct instruction in that it was not simple, brief, impartial, and free from argument. *See Paul v. Safley Const. Co.*, 287 Ark. 412, 700 S.W.2d 55 (1985). This contention is also without merit.

### C. *COMMENT BY THE TRIAL JUDGE.*

The McCrorys assert that the trial court erred when it informed the jury that the writ of attachment was legal. We agree.

The following exchange occurred at trial between Barbara McCrory, Mr. DePriest (her lawyer), the trial judge, and the jury.

Q. DePriest: Did you ever get access to your property?

A. McCrory: Quite awhile later the Court dissolved the Writ of Attachment and determined it wasn't legal and let me have it.

The Court: No, you ladies and gentlemen, disregard that. The Court didn't say the Writ of Attachment wasn't legal. To the contrary, the Writ of Attachment, of course, was legal.

As previously noted, the trial court discharged the writ of attachment (which had been issued by the circuit clerk) because Thomas Johnson had not met his burden of showing, pursuant to Ark. Code Ann. § 16-110-101 (1987) that Barbara McCrory was about to remove or had removed her property, or a material part thereof, from the state. The trial court, in effect, found that under the circumstances the issuance of the writ was not authorized or permitted by our code provisions. *Black's Law Dictionary* 673, 803 (5th ed. 1979) defines "illegal" as "against or not authorized by law," and "legal," in part, as "permitted by law." By incorrectly stating at trial that "the Writ of Attachment, of course, was legal," the court may have led the jury to mistakenly believe that the writ was permitted or authorized by

law (legal) and erroneously conclude that the McCrorys did not have a cause of action based upon the wrongful issuance of the writ. It is reversible error for a trial court to make an incorrect statement or conclusion of law which tends to mislead the jury in arriving at its verdict. *Kidd* v. *Gardner Associated*, 92 Idaho 548, 447 P.2d 414 (1968); *Gaito* v. *City of Pittsburgh*, 390 Pa. 409, 135 A.2d 746 (1957). *See also Haseman* v. *Union Bank of Mena & Haseman*, 262 Ark. 803, 562 S.W.2d 45 (1978). The trial court's comment was improper and should not have been made.

### D. *EXCLUSION OF TESTIMONY.*

The McCrorys argue that the trial court erred in excluding the testimony of Elizabeth Baxley because her testimony was both relevant and admissible, and its exclusion was prejudicial to the McCrorys. We hold otherwise.

On March 30, 1987, Barbara McCrory submitted a complaint to the Prosecuting Attorney's Office concerning the removal of her property from the house that she had leased from Johnson through his agent, Houston. Elizabeth Baxley, a paralegal in the Prosecuting Attorney's Office, contacted Keith Vaughn, appellee Houston's attorney, concerning the property.

During trial, the court informed the McCrorys that Baxley's testimony would not be admissible but that it would allow McCrory to proffer this testimony. Baxley testified in chambers that Vaughn told her that he had advised Houston not to take the property.

Vaughn's advice to Houston to not take the property was protected under the attorney-client privilege since it was made for the purpose of facilitating the rendition of legal services between a lawyer and client. Ark. R. Evid. 502(b)(1). Under Rule 502, Houston had the privilege to prevent Elizabeth Baxley from disclosing this confidential communication. Therefore, the trial court acted properly in excluding her testimony.

Reversed and remanded.

PURTLE, and NEWBERN, JJ., not participating.