**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff-Appellant,**

v.

**Grady P. MORRISON, Defendant-Appellee.**

No. 83–7561.

United States Court of Appeals, Eleventh Circuit.

Nov. 27, 1984.

William D. Hudson, Howard B. Warren, Gadsden, Ala., Thomas S. Richey, Atlanta, Ga., for plaintiff-appellant.

Romaine S. Scott, III, Inge, Twitty, Duffy & Prince, Mobile, Ala., amicus curiae, for Alliance Mortgage Co.

James S. Hubbard, Anniston, Ala., for Morrison.

Before HILL and HENDERSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC) appeals from dismissal by the

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

United States District Court for the Northern District of Alabama, 568 F.Supp. 1240, of its suit for a deficiency judgment. We reverse and remand.

On August 4, 1979, the appellee, Grady P. Morrison, and his employee, Dorothy Ray, jointly owned real estate in Ohatchee, Calhoun County, Alabama. On that date they executed an assignable Note and Security Agreement, mortgaging their property to the East Gadsden Bank in Etowah County, Alabama. Although Ray already had moved onto the property, she gave the bank her outdated Etowah County address and phone number. Morrison supplied neither a number nor an address, even though for twenty-eight years he had received his mail at a post office box in Bynum, Calhoun County, Alabama. The contract specified that if the note should become delinquent, the mortgagee could foreclose on the property after giving notice of the time, place and terms of sale once a week for three successive weeks in a Calhoun County newspaper. Upon execution of the agreement, Morrison deeded his ownership interest to Ray, who purchased it with her proceeds from the note. The district court found that Morrison, in selling his interest to Ray, intended to convey it subject to the mortgage, thereby retaining his rights and obligations as a mortgagor.[1]

Sometime around August of 1980, Ray married, quit her employment with Morrison and moved to Florida, leaving the bank no forwarding address.[2] By December 31, 1980, the note was in arrears. On that date the Superintendent of Banks for the State of Alabama closed East Gadsden Bank. The FDIC became receiver and purchased certain bank assets, including the delinquent note. Attempting to contact the mortgagors with respect to their default, the FDIC wrote to the outdated Etowah County address. The postal service returned these letters stamped "Authorized time for forwarding expired." In reply to a further request for the new address, the postmaster reported "No address." Morrison did not receive actual notice of default or of the FDIC's plan to foreclose. The district court found that a simple inquiry in the area of Ohatchee would have revealed the whereabouts of Morrison.

After publishing the notices required by the Note and Security Agreement, the FDIC held a foreclosure sale on April 2, 1982. The agency's lone bid of $15,640.00 prevailed, and Morrison's debt was reduced by this amount. In June, 1982, Morrison's attorney contacted the FDIC to inquire about the loan. The FDIC replied that it had foreclosed and leased the property to tenants who held a purchase option exercisable one year after the foreclosure date. The attorney reported these facts to Morrison. On August 20, 1982, the FDIC filed a complaint for the balance of the debt. Morrison did not offer to pay the debt and redeem the property until August 1983, over sixteen months after the foreclosure. The tenants had exercised their option. On August 17, 1983, the date of trial, Morrison's total deficiency was $6,461.67.[3]

In defense of this suit for his current liability on the note, Morrison does not dispute the amount. He does not claim that the FDIC breached the contract or violated Alabama law. Rather, he argues that by foreclosing without affording him a hearing the agency has violated the Due Process Clause of the fifth amendment to the Constitution.[4] Morrison suggests that suspension of his responsibility for the debt

---

1. *Cf. Trauner v. Lowrey,* 369 So.2d 531, 534 (Ala.1979). Because the deed is not in the record, we are not in a position to consider whether the district judge's findings regarding Morrison's intent and the sequence of events are clearly erroneous under Rule 52(a), Fed.R.Civ.P.

2. On July 6, 1983, the district court entered a consent judgment for $7,232.27 against Dorothy Long (nee Ray), who consequently is not a party to this appeal.

3. The Note and Security Agreement entitles the mortgagee not only to the amount of the debt but also to interest and reasonable attorneys fees if action is taken to collect a delinquent balance.

4. That clause in relevant part guarantees that no person shall be "deprived of ... property without due process of law." U.S. Const. amend. V.

would cure this violation. The district court agreed, citing *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) as authority therefor.

In response to Morrison's defense, the FDIC pointedly declines to urge that in this case it has performed only a proprietary function not subject to due process requirements.[5] Indeed, the agency admits that in liquidating this asset of a failed bank it has performed a governmental function.[6] Instead the appellant first notes that under Alabama law Morrison's right to redeem the property after foreclosure was, though somewhat more limited, quite similar to his right before foreclosure. From this premise the FDIC reasons that foreclosure did not deprive him of any property. Alternatively, the agency asserts that the Due Process Clause does not apply because the agency has refrained from exercising governmental powers against Morrison. Finally, the FDIC claims that due process required no more than was provided here. We need not reach these questions.

The fifth amendment guarantees due process only to those deprived of life, liberty or property. *E.g., American Druggists Insurance Company v. Bogart*, 707 F.2d 1229 (11th Cir.1983); *Wells Fargo Armored Service v. Georgia Public Service Comm'n.*, 547 F.2d 938, 941 (5th Cir.1977). Precise definition of any property at stake is crucial to determining whether the government has deprived the owner. Property rights " 'are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an indepen-

dent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Parratt v. Taylor*, 451 U.S. 527, 529 n. 1, 101 S.Ct. 1908, 1910 n. 1, 68 L.Ed.2d 420, 425 n. 1 (1981) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)).

Morrison, having sold his rights under the deed, and conceding he has received his every entitlement arising directly from the Note and Security Agreement, turns to Alabama law as the source of his property rights. Under Alabama common law, execution of a mortgage passes legal title to the mortgagee, leaving the mortgagor only his equity of redemption. Payment of the debt revests title in the holder of the equity of redemption, which Alabama treats as a property interest transferable by deed. Foreclosure marks the end of this property right. *Foster v. Hudson*, 437 So.2d 528 (Ala.1983); *Trauner v. Lowrey*, 369 So.2d 531, 534 (Ala.1979); *Mallory v. Agee*, 226 Ala. 596, 147 So. 881 (1932). Upon foreclosure, Morrison gained a statutory right of redemption under Ala.Code § 6-5-230 (1975). This statutory right, though similar to the equity of redemption, is generally less valuable. Section 6-5-231 establishes a system of notice and priorities among the persons eligible to exercise that right. Even if the mortgagor himself is the first to attempt redemption, he must not only satisfy the requirements of the mortgage but also those of § 6-5-235, which mandates additional payments for permanent improvements, taxes and liens on the property. The statutory right of redemption "is a personal privilege, not a

---

5. *Cf. Warren v. Gov't Nat'l. Mortgage Assoc.*, 611 F.2d 1229 (8th Cir.1980); *Roberts v. Cameron-Brown Co.*, 556 F.2d 356 (5th Cir.1977) (In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981). The FDIC seeks to avoid compromising its position in *Federal Deposit Ins. Corp. v. Harrison*, 735 F.2d 408 (11th Cir.1984) (Amended Petition for Rehearing and Suggestion for En Banc Consideration filed July 30, 1984). In any event we find it unnecessary to consider this issue here. *Com-*

*pare Barrera v. Security Bldg. & Inv. Corp.*, 519 F.2d 1166 (5th Cir.1975) (reaching the issue of governmental action where foreclosure on house had deprived mortgagors of their occupancy).

6. In fact, the FDIC obtained permission to amend its Brief on Appeal in order to withdraw its proprietary function argument. The amended brief frankly concedes that such liquidations are a governmental function. Amendment to Brief of Appellant at pp. 2-3, 6, 11, 12-14.

[transferable] property right," which lasts only for one year beginning on the date of foreclosure. *Foster*, 437 So.2d at 529; *Brown v. Bateh*, 362 So.2d 841 (Ala.1978).

■ We agree with Morrison's assertion, undisputed by the FDIC,[7] that Alabama's equity of redemption and statutory right to redeem constitute property protected by the fifth amendment. The Due Process Clause "has been read broadly to extend protection to 'any significant property interest.'" *Fuentes v. Shevin*, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556, 573 (1972) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971)). Thus, the guarantee extends to property rights less substantial than full legal title, whether they come from a private contract, *Fuentes*, 407 U.S. at 86–87, 92 S.Ct. at 1997, 32 L.Ed.2d at 573, or state law. 407 U.S. at 86, n. 16, 92 S.Ct. at 1997, n. 16, 32 L.Ed.2d at 573, n. 16. Even a merely arguable right of possession constitutes property. *Id.* A "person's interest in a benefit is a 'property' interest for due process purposes if there are ... rules ... that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570, 580 (1972). These redemption powers, the FDIC acknowledges, entitled Morrison to the benefit of regaining full legal title immediately upon compliance with the specified financial requirements.

Bolstering our conclusion that these rights are significant rights is Justice Brandeis' longstanding and oft-cited[8] opinion for a unanimous Court in *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). There the Court struck down Congress' attempt under the Frazier-Lemke Act to bestow on farmers rights which frustrated their mortgagees' exercise of preexisting foreclosure powers. Justice Brandeis found that the Act as applied resulted in a taking of property.

[The Act's] avowed object is to take from the mortgagee rights in the specific property held as security; and to that end "to scale down the indebtedness" to the present value of the property. As here applied it has taken from the Bank the following property rights recognized by the law of Kentucky:

1. The right to retain the lien until the indebtedness thereby secured is paid.

2. The right to realize upon the security by a judicial public sale.

3. The right to determine when such sale shall be held, subject only to the discretion of the court.

4. The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

5. The right to control meanwhile the property during the period of default, subject only to the discretion of the court....

---

7. In fact, the FDIC states in its briefs that equitable redemption is a property right. Brief of Appellant p. 11; Reply Brief of Appellant p. 2. The agency also acknowledges Morrison's statutory entitlement and urges the court to consider it as valuable or more valuable to Morrison than was his common law property. Reply Brief of Appellant p. 4.

8. For instance, the Court recently relied on *Radford* in strongly suggesting that a non-possessory, non-purchase-money lien on goods was property protected by the fifth amendment. *United States v. Security Indus. Bank*, 459 U.S. 70, 75–78, 103 S.Ct. 407, 411–412, 74 L.Ed.2d 235, 241–42 (1982) (deciding the case on another ground).

In *Security Industrial Bank* the Court also approved *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1961). In *Armstrong* the Court found that materialmen's liens arising under Maine's commercial code were "property" even though the lienors had failed to take steps to attach their liens, and even though the United States held a paramount lien that in practical effect probably rendered the materialmen's liens worthless. 364 U.S. at 44–45, 80 S.Ct. at 1566–67, 4 L.Ed.2d at 1558–59 (citing *Radford*).

295 U.S. at 594–95, 55 S.Ct. at 865–66, 79 L.Ed. at 1607. Just as Kentucky recognized interests of the mortgagee, so Alabama here created interests in the mortgagor. Morrison's rights to regain full title to the land were no less significant property than a mortgagee's right to protect its secured loan.[9]

Carefully tracing the boundaries of these rights, however, we find that the FDIC has nowhere infringed upon Morrison's property. Foreclosure within the contractual terms and the requirements of Alabama law did not deprive him of his equity of redemption, but only terminated it. The state in creating this interest commanded that it should exist only up to the moment when the mortgagee properly exercised the power of sale. That such a moment was undetermined when the parties signed the mortgage did not nullify the conditional nature of his equity of redemption, any more than the unpredictability of a life estate holder's death can prevent termination of his interest when he actually dies. The blame for turning the once-hypothetical foreclosure into reality lies solely with the mortgagors. It ill becomes a solvent debtor whose delinquent note has contributed to his mortgagee's ruin to complain that the FDIC, struggling to minimize the damage from East Gadsden Bank's collapse, has been a more vigilant creditor than the bank. Under Alabama law, the equity of redemption existed only in the absence of foreclosure. Because foreclosure and the equity of redemption cannot overlap, it is impossible that this foreclosure infringed on Morrison's right. We cannot give Morrison an equity of redemption any larger than the dimensions in which Alabama chose to cut it.[10]

**9.** We give no weight to the Supreme Court of Alabama's brief reference to the statutory right of redemption as "a personal privilege, not a property right." *Foster,* 437 So.2d at 529. We do so because in its original context this quotation holds a significance different from what the fragment alone suggests. Alabama's watershed case on the statutory redemption right is *Powers v. Andrews,* 84 Ala. 289, 4 So. 263 (1888) (Stone, J., concurring in part) (adopted as governing Alabama Supreme Court precedent in *Baker, Lyons & Co. v. Eliasberg and Bros. Merc. Co.,* 201 Ala. 591, 79 So. 13 (1917)). Construing the legislative ancestor of § 6–5–230, Justice Stone explained:

The statutory right to redeem is not property, but a mere privilege conferred by law. This naked right or privilege is not the subject of bargain or sale .... It is, however, a mere incident of ownership; and, if before the sale he has parted with his ... equity of redemption, ... he has then lost his statutory right to redeem. The one is dependent on the other, and the statutory right cannot survive its severance from the property right.

84 Ala. at 294, 4 So. at 266. Thus, a person's entitlement to redeem under the predecessor of § 6–5–230 hinged on his showing that he held an interest at the time of foreclosure. If before the sale that person had transferred his interest, he could not later claim the statutory right. Only those persons within the statute's system of priorities can rely on the right. *Accord, Butler v. Fayette Seed Farms, Inc.,* 280 Ala. 482, 195 So.2d 534 (1967) (quoting *Powers* ). In describing the statutory right as "not property," the Alabama Supreme Court indicates only that the right is primarily personal to those contemplated by the legislature. Of course, a state-created entitlement to redeem is no less "property" merely because it is personal than are nontransferable entitlements to a drivers license or welfare benefits. *See Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970).

**10.** In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), three members of the Court found that a statute giving nonprobationary federal employees the right not to be discharged except for cause gave no right beyond the extent to which it could be enforced under the discharge procedures specified in the statute creating the right. Joined by Chief Justice Burger and Justice Stewart, Justice Rehnquist reasoned, "[W]here the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of [the grantee] must take the bitter with the sweet." 416 U.S. at 153–54, 94 S.Ct. at 1644, 40 L.Ed.2d at 33. Whatever may be the present force of this plurality opinion, *see, e.g., Vitek v. Jones,* 445 U.S. 480, 490 n. 6, 100 S.Ct. 1254, 1262 n. 6, 63 L.Ed.2d 552, 563 n. 6 (1980), where as here both the granted right and its simultaneously imposed limitation are substantive, we cannot disregard the latter in defining the former without contradicting the Alabama Supreme Court's construction of its own statutory and common law. *Cf. O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 785–86, 100 S.Ct. 2467, 2475–76, 65 L.Ed.2d 506, 518 (1980) (Residents' entitlement to have benefits paid for their costs of living in a "qualified" nursing

Nor did the FDIC deprive Morrison of his statutory entitlement to redeem, which necessarily expired one year after foreclosure, precisely according to the conditions under which Alabama granted the right. Far from depriving Morrison of his statutory entitlement, the FDIC triggered it. We note in passing that Morrison received actual notice from the FDIC through his attorney, yet during the ten months remaining to exercise his statutory right of redemption he did nothing toward accomplishing that end. Morrison not only made his bed, he slept on it.

Because we find no deprivation, Morrison's heavy reliance on *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), is misplaced. There the Supreme Court held that Indiana had deprived a mortgagee of his property by permitting a tax sale purchaser of real estate to acquire absolute title free of the mortgagee's lien. The state inflicted this deprivation under a revenue collection statute that at the time of the execution of the mortgage was entirely inapplicable to the mortgage contract and the mortgagee's rights thereunder. *Mennonite,* which construes a mortgagee's rights in a tax sale under Indiana law, offers us little guidance in construing a mortgagor's rights in a contractual foreclosure sale under Alabama law. Also distinguishable is *Johnson v. United States Dept. of Agriculture,* 734 F.2d 774 (11th Cir.1984) (analyzing merely the likelihood on the merits), where the Farmers Home Administration sought to foreclose after making a direct loan under Section 502, Title V of the Housing Act of 1949, 42 U.S.C. § 1472 (1980). Unlike Johnson, Morrison makes no claim that a federal statutory scheme affords him any property right here. Morrison alleges only a deprivation of the Alabama redemption rights.

Because Morrison loses nothing by the mere fact that the foreclosing mortgagee acted in observance of its congressionally

mandated purpose, we hold that he suffered no deprivation and consequently is not entitled to due process. It is unnecessary for us to decide whether FDIC foreclosures might otherwise trigger the fifth amendment, whether the FDIC's notice procedures comport with due process or whether the relief suggested by Morrison would be an appropriate remedy for any such violation. The FDIC is entitled to judgment on its suit for the deficiency.

REVERSED and REMANDED for further proceedings consistent with this opinion.

home does not give residents any property right in having benefits paid to their nursing home

after it has lost its "qualified" status.).