**In re Anthony J. PONTES, Debtor.**

**Anthony J. Pontes, Plaintiff,**

v.

**Deborah Lapatin, Acting City Collector for the City of Providence Sunset Realty, a Rhode Island Partnership; Michael F. Cunha, a Managing Partner of Sunset Realty, Defendants.**

**Bankruptcy No. 99–13945.**
**Adversary No. 99–1133.**

United States Bankruptcy Court,
D. Rhode Island.

June 24, 2002.

John Rao, Esq., Rhode Island Legal Services, Providence, RI, for Plaintiff.

Richard Riendeau, Esq., Pawtucket, RI, for Deborah Lapatin, Acting City Collector for the City of Providence.

Fernando S. Cunha, Esq., Providence, RI, for Michael F. Cunha and Sunset Realty.

## OPINION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

At issue apparently for the first time in this District is the constitutionality of the Rhode Island tax sale statute which has been routinely used in all of the cities and towns of this State since 1896.

The Debtor, a Providence resident, contends that the tax sale of his home, conducted pursuant to Rhode Island law, failed to provide him with meaningful notice of the right to redeem his property, and that the present statutory scheme violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. The Debtor maintains that if the tax sale statute is unconstitutional, the deed conveying the property to the tax sale purchaser, Sunset Realty, is void, thereby restoring the title to him, and limiting the taxes owed to the assessed amount plus statutory interest.[1] The amount of this debt and how it gets paid are essential parts of the Debtor's Chapter 13 plan and financial rehabilitation.

The Collector of Taxes for the City of Providence ("the Collector") concedes that notice of the right of redemption is not provided in the statute, but argues that such omission does not constitute a deprivation of due process.

The constitutional question was raised on cross motions for summary judgment in this adversary proceeding involving the sale of the Debtor's residence by the City of Providence, for unpaid taxes. It is stipulated that: (1) the City conducted a tax sale pursuant to R.I. Gen. Laws § 44–9–1 *et seq;* (2) the City did not provide notice to the Debtor of his statutory right of redemption; (3) the Debtor did not have actual knowledge of the right to redeem;[2] and (4) notice of this right is not required

---

1. Sunset Realty and the Debtor agree that this amount is $2,884.81. *See* Consent Judgment, A.P. No. 99–1133, Docket No. 28, July 17, 2000.

2. So the constitutional question is not moot.

under the statute.[3]

Threshold issues that need to be answered before the due process question is addressed are: (1) whether this Court has jurisdiction to determine the constitutionality of the state tax sale statute, vis-a-vis the Tax Injunction Act of 1937 (the T.I.A.); (2) whether the State of Rhode Island is an indispensable party; and (3) if the State is a party, whether Eleventh Amendment sovereign immunity bars this Court from deciding the instant dispute. Based on the arguments, the applicable law, and for the reasons discussed below, I find and/or conclude: (1) that notwithstanding the T.I.A., the Bankruptcy Court has jurisdiction to hear this matter; (2) that the State is not an indispensable party; and (3) that sovereign immunity does not apply in this proceeding. As to the constitutional question, I conclude that the Rhode Island tax sale statute fails to provide meaningful notice of the right to redeem property after a tax sale, and that this omission violates the Federal Due Process Clause of the Fourteenth Amendment.

*BACKGROUND*

In August 1998, pursuant to R.I. Gen. Laws § 44–9–1 *et seq,* the Collector sold Anthony Pontes' residence at tax sale to recover delinquent taxes due on the property. Prior to the sale, the Collector sent by certified mail a Tax Sale Notice, advising Pontes of the time and place of the sale, and that the sale could be prevented by payment of the overdue taxes. The Notice neither advised Pontes of the statutory right to redeem his property, nor of the existence of or the procedures available to exercise the right of redemption.

The overdue taxes were not paid, the sale was held, and Sunset Realty bought the property for $2,884.81 (the taxes owed, plus accrued charges and penalties). The "Collector's Deed" is subject only to the Debtor's statutory right of redemption, which exists for at least one year following the tax sale, and thereafter until the tax sale purchaser files a notice of foreclosure to quiet title. *See* R.I. Gen. Laws §§ 44–9–21[4] and 44–9–25

---

**3.** R.I. Gen. Laws § 44–9–1(a) states that "Taxes against any person in any town for either personal property or real estate shall constitute a lien on the real estate . . . and attach as of the date of assessment of the taxes . . . ." R.I. Gen. Laws § 44–9–1 (1999). The tax sale is defined by R.I. Gen. Laws § 44–9–8: "If the taxes are not paid, the collector shall . . . sell by public auction for the amount of the taxes . . . the smallest undivided part of the land which will bring the amount, or the whole for the amount if no person offers to take an undivided part." R.I. Gen. Laws § 44–9–8 (1999). Section 44–9–19 defines the right of redemption if the town is the successful purchaser at the tax sale but does not include notice to the property owner of this right. R.I. Gen. Laws § 44–9–19 (1999); *see also* R.I. Gen. Laws § 44–9–21 (1999) (providing for a similar right of redemption where the tax sale purchaser is someone other than the town and consistent with Section 44–9–19, having no requirement for notice to the land owner of this right of redemption).

**4.** R.I. Gen. Laws § 44–9–21 states:

Any person may redeem by paying or tendering to a purchaser, other than the town, his or her legal representatives, or assigns, or to the person to whom an assignment of a tax title has been made by the town, *at any time prior to the filing of the petition for foreclosure,* in the case of a purchaser the original sum and intervening taxes and costs paid by him or her, plus a penalty as provided in § 44–9–19, or in the case of an assignee of a tax title from a town, the amount stated in the instrument of assignment, plus the above-mentioned penalty. He or she may also redeem the land by paying or tendering to the treasurer the sum which he or she would be required to pay to the purchaser or to the assignee of a tax title, in which case the town treasurer shall be constituted the agent of the purchaser or assignee.

R.I. Gen. Laws § 44–9–21 (1999) (emphasis added).

(1999).[5] After the tax sale, Sunset Realty recorded the deed in the Providence County land evidence records. Pontes received no notice, actual or otherwise, that the sale took place, nor did he receive any post sale notice of the right of redemption, the length of time that he had to redeem, or amount of money required to redeem.[6] In fact, Pontes received no notice of any kind until one year after the tax sale, in September 1999, when he received a copy of an amended "Petition To Foreclose Tax Lien," filed in the Rhode Island Superior Court by Sunset Realty. The petition, which initiates the procedure to foreclose the right of redemption, basically advised Pontes of the existence of the action, and the deadline for filing an answer. The petition stated in part:

> Whereas, an amended petition has been presented to said Court by SUNSET REALTY ... to foreclose all rights of redemption from the tax lien proceedings described in said petition in and concerning a certain parcel of land .... If you desire to make any objection to said petition you or your attorney must file a written appearance and answer, under oath, setting forth clearly and specifically your objections or defense....

*See* Joint Statement of Stipulated Facts, Docket No. 99–13945, Ex. C, ¶¶ 1, 4–5.

Less than two months after receiving a copy of the "Petition To Foreclose Tax Lien," Pontes filed a case under Chapter 13 of the Bankruptcy Code, and shortly thereafter he brought the instant adversary proceeding challenging the constitutionality of the State/City's tax sale procedure, on the grounds mentioned above.

The City of Providence and the State of Rhode Island object to the jurisdiction of this Court, first on the ground that the principles of comity, and the Tax Injunction Act (now 28 U.S.C. § 1341) bar this kind of case from being brought in *any* federal court. *See* 28 U.S.C. § 1341. The City also objects to the merits of Debtor's argument on the ground that a taxpayer is charged with knowledge of his/her rights under the law, and that the statute as written provides due process.

In addition, the State of Rhode Island, appearing specially, argues that it is an indispensable party to the suit, that it therefore must be joined as a defendant, and that as a result of this alleged compulsory (and presumably automatic) joinder, dismissal of this adversary proceeding is required based on State sovereign immunity.

### DISCUSSION

I. *Jurisdiction*

a. *The Tax Injunction Act, Federalism, and Comity:*

The City objects to this Court's jurisdiction on the ground that the Tax Injunction Act (the "T.I.A."), and longstanding principles of comity prevent Federal Courts from hearing constitutional challenges to state tax statutes. The dueling statutes are the Tax Injunction Act of 1937, and 11 U.S.C. § 505, which was enacted twenty-nine years later, in 1966. 11 U.S.C. § 505 provides that the bankruptcy court "may determine the amount or *legality of any tax*, any fine or penalty relating to a tax,

---

5. R.I. Gen. Laws § 44–9–25 states: "After one year from a sale of land for taxes, except as provided in §§ 44–9–19—44–9–22, whomever then holds the title acquired may bring a petition in the superior court for the foreclosure of all rights of redemption thereunder."

6. Put simply, the *notice provisions* of the questioned statute are silent as to the right of redemption.

or any addition to tax ..." unless "such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1)-(2)(2000) (emphasis added). The T.I.A., on the other hand, says that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such a state." 28 U.S.C. § 1341.

The resolution of this issue in the Debtor's favor is not difficult. As the Debtor correctly points out, "the Defendant has relied upon authority of questionable application in the bankruptcy context and completely ignored this Court's clear grant of jurisdiction under § 505 of the Bankruptcy Code and those decisions that squarely address the interplay between the Tax Injunction Act and § 505." Memorandum in Support of Plaintiff's Objection, Docket No. 38, at 1–2. Federal Appeals Courts have uniformly ruled that 11 U.S.C. § 505 carves out a well recognized exception to both the T.I.A. and the principles of comity, *for cases being adjudicated within a bankruptcy court.* For example, the Seventh Circuit held that the T.I.A. does not bar *the bankruptcy court,* or the district court on appeal, from reexamining state use tax liability. *In re Stoecker,* 179 F.3d 546, 549 (7th Cir.1999), *aff'd sub nom., Raleigh v. Illinois Dept. of Revenue,* 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); the Tenth Circuit has stated that "the T.I.A. will not preclude the determination of state tax liability where federal courts have jurisdiction under the Bankruptcy Code." 11 U.S.C. § 505. *City Vending of Muskogee, Inc. v. Okla. Tax Comm'n,* 898 F.2d 122, 123–24 (10th Cir.), *cert. denied,* 498 U.S. 823, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990); and the Ninth Circuit has held that the T.I.A. does not bar the jurisdiction specifically granted to the bankruptcy court to enforce provisions of the Bankruptcy Act. *See California State Bd. of Equalization v. Goggin,* 191 F.2d 726, 728 (9th Cir.1951), *cert. denied,* 342 U.S. 909, 72 S.Ct. 302, 96 L.Ed. 680 (1952); *see also Lyford v. City of New York,* 137 F.2d 782, 787 (2nd Cir.1943) (the T.I.A. does not supercede the bankruptcy laws). Moreover, the Tenth Circuit has held that in a bankruptcy setting 11 U.S.C. § 505 confers jurisdiction in the bankruptcy court to review a state tax assessment even where the taxpayer has failed to pursue the state remedy. *City Vending of Muskogee, Inc.,* 898 F.2d at 122.

The City cites two Supreme Court cases to support the argument that the T.I.A and comity deprive this Court of jurisdiction: *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 101–05, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981),[7] the principles of federalism and comity bar taxpayer's damage actions brought in federal courts under 42 U.S.C. § 1983; and *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), where the holding was that a challenge to the constitutionality of a state tax assessment brought under § 1983, was barred by the T.I.A. Based on these two cases, the City argues that not only do comity and federalism bar federal courts from determining the legality of state tax claims, but that the

---

**7.** The Defendants' brief underscored, as salient points of the *Fair Assessment* opinion, that (1) subjecting state tax assessments to federal relief would disturb the ability of states to raise revenue, as taxpayers would be able to avoid state procedural requirements; and (2) that as constitutional issues in state tax matters are likely to turn on state law, said claims should be heard in state courts. While these are reasonable *stand alone* generalities, they do not carry the day for the Defendants *in the bankruptcy context.*

T.I.A. is a "codification" of the principle of federal abstention in state tax matters. *See id.* at 585–91, 115 S.Ct. 2351. The cases cited by the City are inapposite, simply because they in no way involve or address 11 U.S.C. § 505.[8] Courts considering the interplay between the T.I.A. and Section 505 have held that Congress intended the more specific Bankruptcy Code provision to override and supercede the older general language of the T.I.A. *See Stoecker,* 179 F.3d at 549; *City Vending,* 898 F.2d at 123–24; *Adams v. Indiana,* 795 F.2d 27, 29–30 (7th Cir.1986).

The City also cites *Keating v. Rhode Island,* 785 F.Supp. 1094, 1097 (D.R.I. 1992), in support of its argument that the plain text of the T.I.A. proscribes the jurisdiction of *any* federal court, including the bankruptcy court, "where a plain, speedy and efficient remedy may be had in the courts of such a state." 28 U.S.C. § 1341. The City then concludes that because Rhode Island state courts can provide such a remedy, this Court is barred from hearing a constitutional challenge to the statute in question. The City's reliance on *Keating* is misplaced here, as well. In *Keating,* as in the other cases cited by the City, the controversy arose outside the bankruptcy setting, and unlike the Tenth Circuit decision in *National Private Truck Council, Inc., Keating* fails to address the "rub" between 11 U.S.C. § 505 and the T.I.A. In

addition, *National Private Truck Council, Inc.,* specifically says that even where an adequate state remedy is available, 11 U.S.C. § 505 creates an exception to the T.I.A. *within the bankruptcy setting. City Vending of Muskogee, Inc.,* 898 F.2d at 122.

Adopting the view of those courts which have addressed this subject in a bankruptcy setting, I also rule that 11 U.S.C. § 505 created a *bankruptcy exception* to the T.I.A., and that this Court indeed has jurisdiction to hear and decide this bankruptcy related tax issue.

**b.** *The State of Rhode Island as an Indispensable Party, and Sovereign Immunity:*

The State argues that it is an indispensable party which must be joined under Fed. R. Bankr.P. 7019, that as such it is immune from suit under the Eleventh Amendment, and that the Debtor's challenge to the State tax sale statute is barred on that ground.

**1.** *Intervention and Standing:*

To be eligible to even argue joinder under Fed. R. Bankr.P. 7019, a party must file and prevail on a motion to intervene, pursuant to Fed. R. Bankr.P. 7024.[9] Furthermore, Rule 7024 states that a person seeking to intervene "*shall* serve a motion..." Fed. R. Bankr.P. 7024 (em-

---

**8.** In its best light, the City's brief is inaccurate in the assertion that the same prohibition found in the T.I.A. is "intended by congress to apply to bankruptcy courts." Memorandum in Support of City of Providence's Motion for Summary Judgment, Docket No. 33, at 3. In the next sentence of its memorandum, the City cites to *Keating v. Rhode Island,* 785 F.Supp. 1094, 1097 (D.R.I.1992), for the view that federal courts, "including bankruptcy courts" may issue relief only under the limitations imposed by the T.I.A. *Keating* was not a bankruptcy case, and the Court never discussed bankruptcy court jurisdiction under Section 505.

**9.** Fed. R. Bankr.P. 7024 adopts Fed.R.Civ.P. 24 which says "A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefore and shall be accompanied by a pleading setting forth the claim or defense for which the intervention is sought...." The State's failure to move to intervene suggests a lack of concern over its interest in the action, and weakens the State's Rule 7019 argument that it has an interest to be protected.

phasis added). With no such motion (to intervene) filed, and given the mandatory nature of the word "shall", there is no authority to entertain or act upon the State's defective attempt to participate. *See Richman v. First Woman's Bank (In re Richman)*, 104 F.3d 654 (4th Cir.1997) (Holding that a "party-in-interest" who has the right to appear and be heard on any issue must nevertheless satisfy the requirements of Rule 7024 in order to qualify for intervention).

Here, the State opted to file a special appearance and an objection to Plaintiff's motion for summary judgment. These filings, coupled with the State's failure to provide any authority to support its conclusory argument that it is an indispensable party, may not substitute for intervention according to the Federal Rules of Bankruptcy Procedure. Since the State has failed to establish its status as a party,

indispensable or otherwise, it is without standing.[10] Having said all this, and notwithstanding its failure to establish its status as a party, we have listened to and have considered everything the State has to say on the merits of this dispute, with no change in the result.

2. *The State as an (hypothetical) Indispensable Party, and Eleventh Amendment Sovereign Immunity:*

Assuming *arguendo*, for appellate purposes only, that intervention should have been allowed, the issue remains whether the State is an indispensable party to this action, and for the following reasons I conclude that it is not.

 A party is indispensable when it must be joined according to Fed.R.Civ.P. 19, which is incorporated in the bankruptcy rules by Fed. R. Bankr.P. 7019.[11] To

---

**10.** Rule 24 of the Federal Rules of Civil Procedure provides in relevant part:

> When the constitutionality of any statute of a State affecting the public interest is drawn in question in any action in which that State or any agency, officer, or employee thereof is not a party, the court shall notify the attorney general of the State as provided in Title 28 U.S.C. § 2403.

Fed.R.Civ.P. 24(c). Here, proper notice was given to the Rhode Island Attorney General, but this notice does not accomplish joinder of the State as a party.

**11.** Fed. R. Bankr.P. 7019 states that "Rule 19 F.R. Civ. P. applies in adversary proceedings ..." and the applicable section of Rule 19 states:

> *Rule 19. Joinder of Persons Needed for Just Adjudication*
> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of

the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest ...
> (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. *Id.*

establish compulsory joinder, the moving party needs to satisfy both Fed.R.Civ.P. 19(a) and 19(b). *U.S. v. San Juan Bay Marina,* 239 F.3d 400, 405 (1st Cir.2001); *see In re Kish,* 221 B.R. 118, 125 (Bankr. D.N.J.1998). The rule states, *inter alia,* that a party is indispensable if (1) that party's absence would preclude the plaintiff from obtaining complete relief; or (2) the absent party's claim is a legally protected interest relating to the action and as a practical matter its absence would impede its ability to protect that interest or would leave the other parties at substantial risk of incurring multiple damages. Fed. R.Civ.P. 19(a); *see also San Juan Bay Marina,* 239 F.3d at 406. Additionally, it is within the Court's discretion to decide whether in equity and good conscience the case should be dismissed if the person cannot be made a party. Fed.R.Civ.P. 19(b).

■ In considering this standing issue, we rely heavily on *Venuti v. Riordan,* 521 F.Supp. 1027, 1028 (D.Mass.1981), where tavern owners sued the City of Worcester Licensing Commission and the Chief of Police, challenging the constitutionality of a statute authorizing Massachusetts cities and towns to require bars and restaurants to procure a license before presenting any type of nude public show. The statute was held unconstitutional, and in a proceeding to recover costs the district court awarded attorney's fees to the successful plaintiff/tavern owners. On appeal the City of Worcester argued that because the Massachusetts statute had been declared unconstitutional on its face, the State was automatically a party to the fee proceedings, and was therefore accountable for costs and fees awarded to the tavern owners. *Venuti v. Riordan,* 702 F.2d 6, 8–9 (1st Cir.1983). Rejecting this argument, the First Circuit held that neither Fed. R.Civ.P. 19(a)(1) nor 19(a)(2) applied, as

"complete relief" (here, the awarding of fees) could be accomplished without the State's presence, and that attorney fees were not an interest of the State related to the subject matter of the action. *Id.* at 8. The message from this First Circuit decision which is most relevant to the instant dispute is that when the constitutionality of a state statute is challenged, the State is not automatically an indispensable party, and that the requirements of Rule 19 regarding intervention still apply. *See id. at 7–9.*

■ Here, as in *Venuti,* where the constitutionality of a state statute is challenged, a city official is a named Defendant, and the State of Rhode Island, just as the Commonwealth of Massachusetts in *Venuti,* offers no authority for its position but simply declares its status as an indispensable party because the constitutionality of one of its statutes is being challenged. In *Venuti* the First Circuit rejected that reasoning, and the State's similarly flawed argument is rejected here, as well.

Our independent examination of this issue reveals, on other grounds as well, that the state's joinder is not mandatory. Under Fed.R.Civ.P. 19(a) a party is indispensable if the elements of 19(a)(1) or 19(a)(2) are met. Here 19(a)(1) is not satisfied, for if the statute is found unconstitutional the Debtor is not precluded from obtaining "complete relief" without joinder by the State. That is, if the tax sale statute is held to be defective the Debtor will be allowed the opportunity to redeem his property, which is all he wants. On this issue I cannot imagine a scenario in which failure to join the State would preclude complete relief to the Debtor upon a ruling in his favor. Second, Rule 19(a)(2)(i) is not met because, as with the City of Worcester's defense of the Massachusetts state statute in *Venuti,* the

State's interest is the same as that of the City, and that interest has been adequately protected by the City.[12] And finally, Rule 19(a)(2)(ii) is not applicable because a ruling in favor of the Debtor would not create "multiple damages" or preclude the Collector from assessing taxes. The Debtor will still be required to pay the outstanding property taxes as part of his Chapter 13 plan.

Because *both* parts of the Rule must be satisfied before the State may be considered indispensable, it is not necessary to discuss 19(b). Suffice it to say, however, that as the State offered no authority or evidence of a 19(b) violation, I would rule on that ground, as well, that the State is not an indispensable party.

In summary on the Rule 19 issue: (1) the State of Rhode Island has failed, for procedural *and* substantive reasons, to qualify for intervention; (2) the State has failed to establish that it is an indispensable party; and (3) because it has not otherwise intervened, the State is not a party under any scenario. Therefore, State sovereign immunity is not an issue in this adversary proceeding.

II. *The Right of Redemption, and Due Process Protection:*

The Debtor contends that R.I. Gen. Laws § 44–9–21[13] is unconstitutional because it fails to require or provide notice to property owners of their right to redeem property after a tax sale. Before examining whether this (tax sale) procedure satisfies Federal due process, it must first be determined whether the right to redeem is a sufficient property interest to warrant such protection.

a. *Is the Right to Redeem Protected by the Fourteenth Amendment?*

The Debtor contends that the questioned tax sale procedure is unconstitutional because it deprived him of a substantial property interest—his right of redemption—without reasonable or meaningful notice. The Supreme Court ruled in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that the scope and definition of a property interest is an issue of state law, *id.,* and relying on *Roth,* the New Jersey Supreme Court held in *Township of Montville v. Block 69, Lot 10,* 74 N.J. 1, 376 A.2d 909, 912 (1977), that the right of redemption is a significant property interest. The *Block* court also said that a tax sale alone does not completely divest the original owner of fee simple absolute, but that the title obtained by the tax sale purchaser is subject to a remaining property interest in the original owner—the right of redemption. *Id.*

Similarly, the Rhode Island tax sale statute states that "[t]he collector shall execute and deliver to the purchaser a deed of the land ... [t]he deed shall convey the land to the purchaser, *subject to the right of redemption* ..." R.I. Gen. Laws § 44–9–12 (emphasis added), so here as well, the purchaser at a Rhode Island tax sale does not obtain fee simple absolute title until the right of redemption is foreclosed. "The title conveyed by a tax collector's deed shall be absolute after foreclosure of the right of redemption ..." R.I. Gen. Laws § 44–9–24, and during the redemption period the original owner maintains a property interest in the property. R.I. Gen. Laws §§ 44–9–19 and 44–9–25, *supra* notes 3 & 5. Moreover, the

---

12. The State has not sought leave to file an amicus brief, a practice granted liberally by this Court, in which the State could have further articulated its position.

13. And by implication, the statutes' counterpart which applies when the city or town is the successful tax sale purchaser, R.I. Gen. Laws § 44–9–19.

Rhode Island tax sale statute, as it pertains to the right of redemption, is reflected in New Jersey case law, i.e., that a tax sale alone does not divest the original owner of all tenure, but that the title acquired at tax sale is subject to the defaulting taxpayer's right to redeem, until that right is formally extinguished. *See Montville,* 376 A.2d at 912. Clearly the right of redemption is a property interest.

b. *Due Process Protection Vis–a–Vis Significant Property Interests:*

 The next question is whether the right of redemption is a *significant* property interest, i.e., one entitled to federal protection. The Due Process Clause of the Fourteenth Amendment protects significant property interests, and regulates procedures designed to divest people of such interests. *See Mathews v. Eldridge,* 424 U.S. 319, 332–33, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (as applied in *Montville,* 376 A.2d at 912); *see also Goldberg v. Kelly,* 397 U.S. 254, 262–63, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (government benefits and other entitlements are property interests which deserve due process protection). A significant property interest may consist of something less than full legal title, *see Fuentes v. Shevin,* 407 U.S. 67, 86–87, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *see also Goldberg,* 397 U.S. at 262–63, 90 S.Ct. 1011, and the Eleventh Circuit Court of Appeals, relying on *Shevin,* found that as a property interest of less than full legal title before foreclosure, the right of redemption is nevertheless a significant property interest requiring due process protection. *See Federal Deposit Ins. Corp. v. Morrison,* 747 F.2d 610, 613 (11th Cir.1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985).

 Following *Shevin* and *Morrison* this Court also concludes that the right of redemption, as defined by the Rhode Is-

land tax sale statute, is a significant property interest which is retained by the prior owner until said interest is extinguished by foreclosure. *Morrison,* 747 F.2d at 613; *see Shevin,* 407 U.S. at 86–87, 92 S.Ct. 1983.

III. *The Due Process Analysis:*

 Significant property interests may only be divested by procedures that provide due process, and the specific question here is whether due process requires meaningful notice of the right to redeem. Necessary to a resolution of this question is an examination of how that right is exercised, and whether a person who receives bare notice of a scheduled tax sale is charged with constructive knowledge of the entire statute, including the right of redemption and how it is exercised.

 Due process abhors and constrains government procedures that divest individuals of significant property interests. *Mathews,* 424 U.S. at 332, 96 S.Ct. 893. The precise dictates and parameters of due process vary, however, between factual situations, and "(d)ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances," *id.* at 334, 96 S.Ct. 893 (quoting *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)), but "is flexible and calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

 To determine whether an administrative procedure satisfies due process, the Court in *Mathews v. Eldridge* established a balancing test and an examination and evaluation of the governmental and private interests affected by the official procedure, *id.* at 334, 96 S.Ct. 893, and

three factors are generally considered in determining whether the questioned procedure meets due process standards:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute traditional safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893.

a. *The Private Interest That Will Be Affected:*

Because the right of redemption is considered a significant property interest, it clearly is protected by the Fourteenth Amendment. *See id.* at 333, 96 S.Ct. 893; *see also Goldberg v. Kelly,* 397 U.S. at 262–63, 90 S.Ct. 1011. This element is easily resolved in the Debtor's favor.

b. *Risk of Erroneous Deprivation of Property:*

This is the *Mathews* factor most relevant to this case, i.e., whether the failure of the statute to require reasonable notice of the right to redeem creates a risk of an erroneous deprivation of property.

The Due Process Clause requires *meaningful* notice of any procedure that deprives an individual of life, liberty or property. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and meaningful notice must include "notice reasonably calculated under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. 652. Meaningful notice also is "reasonably calculated under the circumstances" if it is provided "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

There is not a First Circuit case directly on point, but other jurisdictions following *Mullane* have held that a delinquent taxpayer is entitled to meaningful notice of his/her right to redeem, *before* that right may be foreclosed. *Weigner v. City of New York,* 852 F.2d 646, 652 (2nd Cir. 1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989) (meaningful notice in accordance with due process was given, as "[t]he City discharged its burden by sending notice that was reasonably calculated to inform interested parties that the foreclosure action had been initiated and to *apprise them of the availability of the redemption and release remedies."*) (emphasis added); *see Montville,* 376 A.2d at 912 (actual notice of the right of redemption must be provided in writing before a taxpayer's right to redeem his property may be foreclosed). These cases are persuasive and applicable, and their reasoning and conclusions are adopted here.

The Debtor also relies upon *Dionne v. Bouley,* 583 F.Supp. 307 (D.R.I.1984), *aff'd as modified,* 757 F.2d 1344 (1st Cir.1985), where a Rhode Island post-judgment garnishment statute was held to be defective because it failed to provide adequate notice to a judgment Debtor of her right to claim certain bank funds as exempt. In that case the tenant in an eviction suit was ordered to pay $550 in back rent, and when she failed to pay, the creditor attached her bank account twice within a four day period. 757 F.2d at 1346. The attached funds were all traceable to social security benefits, which in Rhode Island are exempt from attachment. *Id.* The tenant was not given notice of the right to claim these funds as exempt, and was unaware of procedures through which the attachments could be challenged. *Id.* at 1347. The

First Circuit endorsed the District Court's holding that the right to exempt funds from attachment is a property interest entitled to due process protection, and that in the circumstances the risk of an erroneous deprivation of that interest was present. *Id.* at 1350–51. The statute here under scrutiny violates both the *Mullane* standard, specifically, and due process generally by its failure to provide " 'notice to be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 1354 (*quoting Mullane,* 339 U.S. at 314, 70 S.Ct. 652).

The right to declare as exempt from attachment funds in a bank account is a property interest not very different from the right to redeem real property after a tax sale. *Id.* at 1350, 1352; *see generally Goldberg,* 397 U.S. at 262–63, 90 S.Ct. 1011 (public assistance payments to welfare recipients are property interests entitled to due process protection before benefits can be terminated). The analogy of a post-judgment garnishment procedure (*Dionne*) to the tax sale procedure under scrutiny is about as close as it gets, since notice in either case gives owners the opportunity to remove attachments from their property. As with the procedure in *Dionne,* which failed to provide the plaintiff with notice of her right to claim social security benefits as exempt, the Rhode Island tax sale statute fails to require notice of the right to redeem—a right which, when exercised, produces the same result as exercising the right to claim exemptions—it frees property from attachment. Accordingly, for the same reasons given by the District Court[14] and the First Circuit in *Dionne,* this Court concludes that the Rhode Island tax sale

statute is defective in that it creates the risk of an erroneous deprivation of the property interests of Rhode Island property owners who default in the payment of real estate taxes.

The City also argues that (1) because the statute does provide for notice of the tax sale itself, taxpayers are therefore put on sufficient notice and charged with knowledge of all their rights under the law; and (2) since the statute provides for a judicial hearing (the proceeding to foreclose the right to redeem), the erroneous deprivation of property is not a factor. As for the City's first argument, the cases discussed above, and particularly the First Circuit ruling in *Dionne,* say that interests such as the right to assert an exemption from attachment require actual rather than constructive or imputed notice, and that bare notice of the attachment is "limited to that fact alone and would not enlighten the debtor as to his rights and remedies." *Dionne,* 757 F.2d at 1352. From a policy standpoint, as well as factually, *Dionne* and the case at bar are analogous. In *Dionne,* the bank account was described by the First Circuit as one of "life's basic necessities . . . requir[ing] that Rhode Island provide and spell out procedural rights and remedies more clearly than it has yet done." *Id.* Similarly here, the risk of forfeiture of property as a result of not having actual notice of the right of redemption is real, and unreasonably exposes the Debtor to the loss of another of life's basic necessities—the place where he lives. The City's argument that the "notice of hearing" provided by the statute also satisfies due process is not the law in the First Circuit, because the right of redemption ends when the tax sale purchaser files the foreclosure petition.

---

14. This Court is quite comfortable following the lead of District Judge Raymond Pettine, who in his usual eloquent style articulated exactly what I want to say here. *See Dionne,* 583 F.Supp. at 314–319.

Notice of the proceeding *after* the filing of such a petition does little for a debtor whose right to redeem has already been extinguished.

While it might be argued technically that a debtor may redeem the property at the foreclosure hearing, *see* R.I. Gen. Laws § 44–9–29, this is insufficient, given the expense and burden added to the redemption process once the foreclosure proceeding has commenced. Section 44–9–29 requires not only the payment of taxes, interest and penalties, but also the petitioner's counsel fees and costs to bring the foreclosure proceeding. *Id.* The right to participate at this stage of the process is too little too late and does not amount to adequate due process. Notification of the right to redeem after litigation ensues is meaningless, given the significant additional costs of litigation that must be paid by the debtor as a condition of the redemption.

Based on the cases discussed above, and in the absence of any relevant contrary authority, it is the ruling of this Court that the failure to notify the Debtor of his right to redeem creates an unreasonable risk of erroneous deprivation of a significant property interest. While all of the factors discussed herein are important, this one weighs most heavily in the determination that procedural due process is missing from the Rhode Island tax sale statute.

c. *Balancing the Government's Interests:*

The third factor in determining the adequacy of the questioned administrative procedure is whether the City would be unreasonably burdened by requiring it to provide notice of the right to redeem at some point during a tax sale procedure. The *Mathews v. Eldridge* balancing test requires that the private interests of individuals be compared with "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335, 96 S.Ct. 893. In *Dionne,* the First Circuit reasoned that providing notice of the attachment and a possible exemption claim would not place a great burden on the state. *See Dionne,* 757 F.2d at 1354.

Here, as well, an adequate fix of the notice procedure would not unreasonably burden the City. By way of example only,[15] due process would likely be satisfied by including (or better still, by paraphrasing in plain English) the language of R.I. Gen. Laws § 44–9–21, and by placing the same or similar advisory language in the original tax sale notice and in any subsequent foreclosure action. Not even additional postage would be required.[16]

## CONCLUSION

For all of the foregoing reasons, this Court rules: (1) that the right of redemption is a significant property interest, and any procedure designed to divest a person of such an interest must provide meaningful notice within the meaning of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) that the Rhode Island tax sale statute, R.I. Gen. Laws § 44–9–1 *et seq,* is unconstitutional because it fails to require or provide such notice.

---

15. It is not this Court's function to dictate to the State legislature how to word its statutes, and all we have done here is point out where the present statute fails to satisfy federal due process in bankruptcy cases.

16. As a matter of judicial notice, we note that at least twenty-six states require notice of the expiration of the right of redemption following a tax sale, and that if the State of Rhode Island saw fit to amend the statute, it would not be breaking new ground.

Accordingly, the Debtor's Motion for Summary Judgment is GRANTED, and the tax sale and the Collector's Deed conveying the property to Sunset Realty on August 27, 1998, are declared void. Unpaid taxes shall be paid in accordance with the parties' Consent Judgment dated July 17, 2000, Docket No. 28. The City's Motion for Summary Judgment is DENIED. Finally, the State of Rhode Island is not a party, and sovereign immunity is not an issue in this proceeding.

Enter judgment in accordance with this opinion.